McBride, judge.
Relator, Ralph Dupas, aged 21, a pugilist, seeks a mandamus against the Mayor of the City of New Orleans and the Chairman and Registrar of Vital Statistics for the City Board of Health, for a delayed certificate of birth showing him to be a member of the white race. He alleges that he is the child of Peter Dupas and Evelyn Foto, born October 14, 193S, in New Orleans. He further alleges that his efforts to secure a delayed birth certificate from respondents in accordance with the statutory regulations and the rules of the City Board of Health have been unavailing.
Respondents interposed exceptions of no right and no cause of action and, alternatively, excepted to the jurisdiction of the court ratione materiae. Then answering, with full reservation of their exceptions, respondents set up as their defenses: (a) that relator was born in Davant, Parish of Plaquemines, and not in New Orleans; (b) that he is the child of Peter Duplessis, father, and Evelyn (Eveline) Duplessis, mother, both colored; and (c) that relator’s birth was registered with the Bureau of Vital Statistics, State of Louisiana, on November 12, 1935, as per registration number 24,795. Respondents then pray for a dismissal of the suit, and, alternatively, it is prayed that in the event they are ordered to issue to relator the delayed birth certificate that they be authorized to issue the same in his true name and that his race or color be stated therein.
On the return day when the matter was called for hearing, the exceptions were considered by the court, the result being that the exception of no cause of action was overruled, and rulings on the other exceptions were reserved inasmuch as the judge thought these exceptions must rest on the evidence to be adduced upon the trial of the merits of the case.
After a trial which consumed six days,, at which numerous witnesses testified and' some ninety documents or photostatic copies were introduced into evidence, the trial judge, with written reasons, rendered judgment overruling the exceptions to the court’s jurisdiction ratione materiae and no right of action, and the writ of mandamus sought by relator was made peremptory and respondents were ordered to issue the delayed birth certificate. Respondents have appealed.
Upon argument of the case before this court, we requested counsel to confine themselves to the issue whether relator’s birthplace was in the Parish of Plaquemines or the City of New Orleans as that is the focal point in the case, and if it be true, as respondents contend, that relator was not born in New Orleans, then the wrong defendants are before us and the suit must fall. Counsel were informed that if the court should conclude that relator was a native of New Orleans, the case would in due course be refixed for further argument.
Under the terms of Act 257 of 1918, LSA-R.S. 40:147, prevailing at the time of relator’s birth, the State was divided into districts for the registration of births and other vital statistics, and the Parish of Orleans and the City of New Orleans, together, were constituted a separate and distinct primary district. Provisions were made for the appointment of local Registrars of Vital Statistics for each of the registration districts, and the Chairman of the Board of Health of the Parish of Orleans and the City of New Orleans was designated as ex-officio Recorder for said parish and city. It was provided that within ten days after the date of each birth, a certificate thereof shall be filed with the Local Registrar of the district within which the birth occurred. (See Sections 4, 13, LSA-R.S. 40:149 to 40:152, 40:243.) LSA- *79 R.S. 40:322, 323 make provision for the acceptance of any registration more than six months after the time prescribed for its filing — in other words, the filing of a delayed birth certificate.
Counsel for respondents have renewed and reurged their exceptions to the trial court’s jurisdiction ratione materiae and no right of action, but we conclude that the exceptions were properly overruled below. The Louisiana Constitution of 1921 LSA-Const., confers jurisdiction on the Civil District Court for the Parish of Orleans in cases “where no specific amount is in contest” such as a mandamus proceeding. Art. 7, §§ 35, 81. The exception of no right of action has as its basis the theory that as relator’s birth occurred in a place other than the Parish of Orleans, he has no legal right to demand the delayed certificate from respondents. Relator specifically alleged he was born in New Orleans, and if it is a fact that this allegation is untrue, which is one of the defenses raised in the answer, that is a matter which addresses itself to the merits of the case rather than being a predicate for the exception of no right of action, and if the suit is to be dismissed, we think it would be proper that the judgment should be based on the merits and not on the exception.
In support of his claim that his birthplace is New Orleans, the most important evidence relator introduced was elicited from Mrs. Harold J. Powell, a close friend and neighbor of Evelyn Dupas, who testified that she actually observed the birth on the evening of October 14, 1935, in the Dupas home at 620 Mandeville Street, after she and Evelyn Dupas had returned from a theater. The witness stated that the event transpired before she could even summon the midwife, Mrs. Legendre, who had previously been engaged by Evelyn Dupas.
A man named Enos V. Russell, another of relator’s witnesses, also testified that he was born in New Orleans. Russell’s testimony is that his half sister, Mrs. Loretta Legendre, a graduate midwife, attended Mrs. Dupas, whom he personally knew, during her pregnancy with relator, and that the birth took place at the mother’s home on Mandeville Street rather than at his sister’s maternity home. Russell insists he handled some of his sister’s business and that he remembers relator’s birth because it took place shortly before Armistice Day, the date on which his own son was born.
Other testimonial evidence introduced by relator emanated from his mother and father, the mother testifying that relator was born in a house on Mandeville Street, and the father stating that all of his children, including relator, were born in New Orleans. Another witness, Josephine St. Ann Duplessis, an aged woman, late of the Parish of Plaquemines, but now a resident of New Orleans, about whom some comment will be made later herein, testified she is the foster mother of Evelyn Dupas, and that her said foster daughter immediately upon her marriage with Peter Dupas moved from the Parish of Plaquemines with him to New Orleans, and that New Orleans has been their home ever since.
Christophe Duplessis was also called as a witness for relator, hut his testimony is such that no useful purpose can be served by it. This man testified first that Evelyn Dupas moved from her Plaquemines Parish home upon being married to Peter Dupas, and that all her children were born in New Orleans. However, after extensive impeaching testimony and evidence, he changed his story and said that Ralph Dupas was born in Davant, Louisiana, Parish of Pla-quemines, in October 1935. The trial judge in referring to this witness commented: “I don’t think he knows what he’s talking about himself most of the time.”
In an effort to bolster relator’s contention that the City of New Orleans is his birthplace, there was introduced on his behalf the inscription on the records of Sts. Peter and Paul Church, which reflects that on *80 November 27, 1935, one Ralph Salvador Dupas, son of Peter Dupas and Evelyn Foto, born October 14, 1935, was baptized by the pastor. The inscription mentions no place of birth, but nevertheless the trial judge concluded that there is a presumption that Ralph Salvador Dupas was born within the limits of Sts. Peter and Paul Church in view of “the rule of church” as related by Fr. Cunningham, the present pastor for two years, that baptism takes place in the ecclesiastical parish in which the child is born. Notwithstanding that the church record alluded to contains no information whatever as to where the person baptized was born, we find in the record two certificates issued from Sts. Peter and Paul Church attested to by Fr. Boeshans which are not in keeping with the baptismal register and are unexplainably in conflict with each other. The first of these documents sets forth that Ralph Salvador Dupas, child of Peter Dupas and Evelyn Foto, born the 14th day of October, 1935, in St. Bernard Parish, Louisiana, was baptized on the 27th day of November. Subsequently, Fr. Boe-shans issued another certificate identical in all respects to the above except that the place of birth is stated to be in New Orleans. This latter certificate bears the date August 5, 1957.
In order to further corroborate his contention, relator also offered in evidence records of the Orleans Parish School Board beginning in 1941, which carry notations to' the effect that relator’s birthplace is New Orleans.
Respondents’ contention that Ralph Dupas was not born in New Orleans is supported primarily by a birth registration of “Ralph Duplessis” born of the union of Peter Duplessis and Eveline Duplessis on October 15, 1935, in the hamlet of Davant, near Pointe-a-la-Hache in the Parish of Plaquemines. This certificate, of much significance, was ruled inadmissible as evidence by the trial judge as a public record. The basis for that ruling was that Mrs. Lucretia Gravolet, the registrar, whose signature purportedly appears at the bottom of the certificate, admitted that her son, a young man 18 years old at the time and who had no official position as registrar or deputy registrar, signed Mrs. Gravolet’s name inasmuch as the notation “per B. C. G.” clearly appears beneath the signature on the original document. An additional irregularity in the preparation of the original birth certificate was noted by the judge from the testimony of Mrs. Herbert Duplessis (no relative of anyone connected with this case), the midwife who, although she had no independent remembrance of the occasion of the birth or of the identity of the parents of the child, nevertheless stated she filled out the birth certificate form in her own handwriting and signed the same, the information therein having been obtained from the parents. Mrs. Duplessis was certain she delivered “Ralph Duplessis” on the date shown on the certificate, and she told of having entered all information at the proper places provided in the form, except she did not fill in the blank space reserved for the color or race of the parents. This, she says, was a matter she left to Mrs. Gravolet as was her custom, because Mrs. Gravolet knew all of the inhabitants of that section of the state and was acquainted with their racial status and would place the proper information on all birth certificates. These statements are vehemently denied by Mrs. Gravolet.
The original birth certificate evidencing the birth of the child called “Ralph Duples-sis” and prepared by Mrs. Duplessis, the midwife, as aforesaid, was filed in the office of Mrs. Gravolet, the local registrar, on November 11, 1935. When said local registrar filed it in the office of the State Bureau of Vital Statistics in New Orleans pursuant to Act 257 of 1918 then in force, the certificate was assigned the number 24,795.
Mrs. Duplessis had practiced midwifery in New Orleans for a number of years and then moved to Davant where she took up her practice and delivered many babies, and according to her testimony she invariably filled out and signed the neces *81 sary certificate required by law, the space for the race or color of the parents being left blank so that Mrs. Gravolet, upon filing the certificate, could complete the same.
We are of the opinion that our esteemed brother below fell into error when he excluded the certificate in question from evidence. Even if it be true that Mrs. Gravolet and not the midwife in attendance filled out that part of the certificate relating to the color or race of the parents, and notwithstanding that the son, and not Mrs. Gravolet, the registrar, received and filed the certificate, still the document has all of the force and effect of a public record. The evidentiary character of certificates and of certified copies thereof on file in the Division of Public Health Statistics is set forth in LSA-R.S. 40:159, said section in part reading:
“A. Except for delayed or altered certificates, every original certificate on file in the division of public health statistics is prima facie evidence of the facts therein stated. * * *
“The contents, or part of the contents, and the due execution of any certificates on file in the division of public health statistics may be evidenced by a copy of the material contained in the certificate as certified by the state registrar. Certified copies shall be admitted as evidence under the same conditions as the original.
“The admissibility in evidence of a delayed or altered certificate is subject to the discretion of the court, judicial or administrative body, or official to whom it is offered as evidence.”
The certified copy of the birth record of “Ralph Duplessis” before us bears a certification, dated October 4, 1957, to the effect that the same is a true copy of the original certificate duly registered and on file with the Louisiana State Department of Health, Division of Public Health Statistics, which is signed by Mr. A. Ciaccio, State Registrar. The original has been, on file with the Division of Public Health Statistics for more than twenty-one years and so far as is known it has never been attacked or challenged by anyone. The said certificate is not a delayed certificate as spoken of in LSA-R.S. 40:159, nor does it appear or has it been shown that it is an altered certificate; and in accordance with the clear provisions of the statute, the certified copy thereof must be received by the court as prima facie evidence of the facts therein stated, simply meaning that if not rebutted or contradicted, the facts stated are to be taken as being proved. Therefore, we shall consider the birth certificate of Ralph Duples-sis along with the other evidence contained in the record,
Counsel for respondents argue strenuously that the Ralph Duplessis whose birth at Davant, Parish of Plaquemines, on October 15, 1935, is shown on the certificate is the same person as the Ralph Dupas who is endeavoring to obtain a delayed birth certificate from the City Board of Health. Respondents advance the further contention that Peter Duplessis and Eveline Duplessis, the parents of said Ralph Duplessis, are the same persons now known as Peter Dupas and Evelyn Foto Dupas.
Relator denies that his surname is Du-plessis and Peter Dupas, his father, claims his name has always been Dupas. Evelyn Dupas admits that before coming to New Orleans with her husband she lived in Davant in the Parish of Plaquemines, but she denies that her maiden name was Du-plessis and insists it was Foto.
Anent Peter Dupas, relator’s father, the evidence established to the entire satisfaction of the trial court that he is the same person as the Pierre Theodore Duplessis whose baptism is inscribed in the records of St. Katherine’s Church, New Orleans. The judge made mention of the fact that said person is also shown on the records *82 of the Orleans Parish School Board under the name “Peter T. Duplesi.” We are heartily in accord with the trial judge’s conclusion as to the identity of Peter Dupas.
Notwithstanding that relator’s mother proclaims that her maiden name was Foto, we have no doubt she was before her marriage Eveline Duplessis. No kinship exists between her and Pierre Theodore Duplessis despite their identical surnames.
Mention has previously been made of the aged woman Josephine St. Ann Duplessis, who appeared as one of relator’s witnesses and who claimed to be the foster mother of Evelyn Foto Dupas. Her testimony is that Evelyn Dupas was a foundling left with her at an early age. The witness claims she was Josephine St. Ann and married twice, firstly Clebert Maturin Duplessis, who died, and secondly Myrtille Duplessis. Her story is that while seated on her porch in the Parish of Plaquemines one day a man, whom she had never before seen, passed by the house with a baby girl in his arms and “he asked me if I wanted to hold the little baby until he came back, one day or two days, and he never did show up.” She says she had three children of her own at the time and kept the child calling it Eveline, and raised it with her own children until the time Eveline left with Peter Dupas to live in New Orleans. Josephine St. Ann Duplessis says the man who deserted the child told her its mother had died and that his name was Foto. She has never seen the man since.
A suspicious circumstance is that Josephine St. Ann Duplessis kept the child’s identity a secret down through the years and never confided the nature of its origin to anyone — not even her own children. She did not apprise Eveline of the facts until she “got big.”
Stranger still, and tending to entirely refute Josephine St. Ann Duplessis’ narrative as to Eveline being a foundling, is the fact that although she unequivocably disclaimed that she is the mother of the child, yet Josephine St. Ann Duplessis admits she had the child baptized. She said the child “was not baptized; I baptized her.” Placed into the evidence by respondents is the original baptismal entry on the records of St. Thomas Church, Pointe-a-la-Hache, dated June 25, 1916, which shows the child Eveline Agnes Duplessis to be the legitimate daughter of Marthurin Klebert Duplessis and Josephine St. Ann, and reflects the baptism as having taken place only sixty-two days after the date of birth stated in the entry, which is irreconcilably in conflict with the claim that the child was about eighteen months old when the man gave her to Josephine St. Ann Duplessis.
The testimony of Evelyn Dupas stands in drastic contest to that of her so-called foster mother as to where the former had been born. Josephine St. Ann Duplessis swore that she had no information from the man as to the child’s birthplace, yet Mrs. Dupas testified that her foster mother told her that her birth had taken place in Lake Charles.
Mr. Ciaccio, State Registrar of Vital Statistics, appearing on behalf of respondents, testified that when attempts were made on behalf of Ralph Dupas to obtain a delayed birth certificate from the State Bureau of Vital Statistics, he proceeded to the Parish of Plaquemines for the purpose of making an investigation of the applicant, during the course of which, December 1954, he located the baptism certificate of Eveline Agnes Duplessis in St. Thomas Church. Mr. Ciaccio points out that a certain marginal notation appears on the photostat of the original entry offered in evidence by respondents which did not appear on the original entry when he viewed it in December 1954. In support of this he produced a certified copy of the original entry attested to by the pastor of the church which does not show the existence of any marginal notation or the name “Foto.” The marginal notation in question reads “Foto marriage convalidated in St. Mary’s Italian Church N. O. to Pierre T. Dupas 10 October 1953.” Who made the notation is not known and its purpose is unexplained. But, *83 be that as it may, there is no denial that the child baptized as Eveline Agnes Duplessis is the present Mrs. Peter Dupas.
It might be stated that a plausible reason for the marginal notation being placed on the baptismal record is that Peter Dupas and Evelyn Foto were not married until September 28, 1953, when the ceremony was performed by a justice of the peace in the Parish of St. Bernard. This marriage was either “blessed” or the parties remarried with religious rites in St. Mary’s Italian Church in New Orleans on October 10, 1953, which is the date appearing on the margin of the baptismal record of Eve-line Agnes Duplessis. She was married under the name of Evelyn A. Foto.
We have heretofore referred to the baptism of Pierre Theodore Duplessis in St. Katherine’s Church, New Orleans. The entry thereof in the church records also reflects that a marginal notation had been written in on the original. The transcription of evidence stipulates that on the record of the baptism of Pierre Theodore Du-plessis there appears in different ink the notation “goes under the name of Dupas” and “married Evelyn A. Foto.”
The marginal entries on the two certificates of baptism should present no difficulties, and we conjecture that the reason for their presence is that the respective churches in which the parties had been baptized meant to keep a record of the marriage and the names under which they married on the baptismal certificates, but, be that as it may, there is no question that the parties mentioned in the baptismal certificates are the parents of the relator in the present case, and the marginal entries serve to further demonstrate that fact.
The respondents by the presentation of proper certificates have shown that there are records showing Peter and Eveline Duplessis had three children in the Parish of Plaquemines. Already discussed at length is the birth registry of Ralph Dup-lessis. The first child born to the couple was called Peter Theador Duplessis whose birth is recorded as having taken place on November 28, 1932. Another record on file in the State Bureau of Vital Statistics pertains to a second child born to Peter Duplessis and Eveline Duplessis, and this shows that Eveline Duplesis was delivered of a stillborn child on October 28, 1934.
Comparing the three certificates above mentioned with those issued by the Board of Health in New Orleans respecting children subsequently born to Evelyn Dupas, there appears a bit of information which in a measure seems to connect Peter Dupas and Evelyn D'upas with the Peter Duplessis and Eveline Duplessis to whom were born the children known as Peter Theador Du-plessis, Ralph Duplessis and the stillborn child aforementioned.
Mrs. Dupas stated from the witness stand that she had eleven living children and denied any child she bore was dead. However, upon the birth of her eleventh child in Hotel Dieu on December 11, 1956, Mrs. Dupas informed the clerk at the hospital charged with taking the required information from the mother that she had one child which had been born dead, and such information was written in the space provided therefor on the eleventh child’s birth certificate. The clerk states that Mrs. Dupas signed the certificate with her husband’s name “Peter Dupas.”
We are inclined to believe that the incidence of the stillborn child has some pertinency to the issue with which the court is concerned. It is shown that Peter Duplessis and Eveline Duplessis had a stillborn child in the Parish of Plaquemines, and it is a fact that Mrs. Evelyn Dupas stated to the clerk in the Hotel Dieu that she had one child which was stillborn.
It is apparent from a transcription of his testimony that Peter Dupas was an uncooperative witness, and it is indicated he adopted a surly attitude while testifying. This man ignored a summons to appear as a witness and his attendance *84 was compelled by attachment. His attitude indicated that he had something to hide, and due to a professed lack of memory he .could not answer some questions he could reasonably have been expected to answer. For instance, he could not remember whether he attended the funerals of his mother and father. He disclaimed any connection whatsoever with the Parish of Plaquemines, and when asked if his wife ever lived there answered, “Not that I know of.” The record bears out the fact that Evelyn Dupas was raised in Plaque-mines Parish and that Peter Dupas well knew of that fact. His denials that he' ever lived in the Parish of Plaquemines are glaringly in conflict with the testimony of Evelyn Dupas that both she and her husband “came from Plaquemines.”
The denials of relator’s parents that they ever lived in Plaquemines after marriage or that any of their children were born there do not stand up in the light of countervailing evidence given by three reputable witnesses produced by respondents.
Mrs. Gravolet, a lady 75 years old, who has lived in Davant all of her life and has served as a school teacher and principal for thirty-five years, postmistress, and registrar for the State Board of Health for a number of years, testified that she Has “always known the Duplessis family” and identified Evelyn at the trial. She states she lived near the family and that Eve-line’s sister was nurse to Mrs. Gravolet’s son and Eveline would come to her home ■on occasions. Mrs. Gravolet also states she knows Eveline’s husband, Peter, and saw him nearly every day when he was courting Eveline. The witness also testified she knows Ralph Dupas, and that sometimes he would visit his grandmother in Plaquemines Parish, and that the Ralph Dupas she refers to is the same person •she saw in court. Most importantly Mrs. Gravolet states that she observed the pregnancy of Evelyn Dupas, whom she identified as Eveline Duplessis, before the birth of the child, Ralph Duplessis, -who was. registered with her as having been born in Plaquemines Parish on October 15, 1935.
John Ansardi, formerly a resident of Plaquemines Parish, who is engaged in business as an automobile dealer in Buras, states he knows Peter Duplessis, whom he identified in the courtroom, and that this man worked for the witness’ brother and trapped his lands in Plaquemines Parish. It would not be amiss to state here that the birth certificate of Ralph Duplessis sets forth that Peter Duplessis, father, was a “trapper.” John Ansardi mentioned that Peter “had children,” and also stated that he knows Peter’s wife, Evelyn.
Heard Ansardi, deputy sheriff and property manager, also a lifetime resident of Davant, testified that he has known Ralph Duplessis from babyhood and that Ralph’s mother and father, Peter and Evelyn Du-plessis, lived only a short distance from where he formerly lived. He referred to Peter Duplessis as “Pete” and states he has been acquainted with him from childhood. He remembered that two children were born to the Duplessis couple, Peter, Jr., and Ralph, and that he observed Evelyn’s pregnancy with Ralph. He went on to state Ralph Dupas, the prize fighter, is the same Ralph Duplessis who was born to Evelyn in Plaquemines Parish. He also mentioned that the Dupas family left Da-vant but from time to time would return on visits.
After sifting, analyzing and digesting the contents of the sizeable record, there is only one logical conclusion we can reach and that is that Ralph Dupas, the present relator, is the same Ralph Duples-sis who was born to Peter Duplessis and Eveline Duplessis in Davant, Parish of Plaquemines, on October 15, 1935.
It is true that our brother below thought otherwise and that we disagree with him on a question of fact, but we think that if the trial judge had admitted the disputed birth certificate in evidence, he might and possibly would have formulated a different *85 conclusion. The decision of the lower court rested in a large measure on the testimony of Mrs. Powell, whom the judge characterized as a straightforward, honest and credible witness. We have no doubt that Mrs. Powell was in good faith when testifying, but we think she witnessed the birth of one of the other children of Mrs. Dupas and not that of Ralph, who, the evi•dence shows to our entire satisfaction, was born in Davant. We gather this from the fact that Eveline Duplessis was somewhat vague in stating the various addresses at which she and her husband resided in New Orleans, and from her testimony it does not appear that in October of 1935 that the Dupas family was living in the house on Mandeville Street.
The testimony of the witness Russell is ■not impressive. He is an usher at the prize fights in New Orleans and is acquainted with Ralph Dupas’s fight manager. We ■cannot deem the mother and father of relator or Josephine St. Ann Duplessis credible witnesses. Even if we could possibly •discern some apparent truth in what they said, the value of their testimony would .be to a large degree lessened by the fact of -their relationship to relator and their inter•est in the case and zeal on his behalf. On the other hand respondents’ principal witnesses, Mrs. Gravolet, John Ansardi and Heard Ansardi, appear to be persons worthy of belief, and it is beyond us to understand what possible interest they could Ihave in the outcome of the case or what ulterior motives would prompt them to testify as they did.
A few words should be said regarding the presumption which the trial judge thought arose from the fact that Ralph Dupas was baptized in Sts. Peter and Paul ■Church. It is true Fr. Cunningham testified that a child, by rule of the church, is to be baptized in the ecclesiastical parish where his birth occurred, but the priest ¡pointed out that while under church law a person should be baptized in his own church parish, “it does not always happen.” There also exists the pertinent circumstance that Fr. Boeshans of Sts. Peter and Paul Church issued one of his certificates showing that the Ralph Salvador Dupas who was baptized in the church had been born in St. Bernard Parish.
What this court said in Owens v. Felder, 35 So.2d 671, 672, is quite apropos here:
“We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial.”
The relator not having proved his birth took place in the Parish of Orleans, we cannot order the officials of the City of New Orleans to issue a birth certificate to him.
For the reasons assigned, it is ordered that that portion of the judgment appealed from which makes the alternative writ of mandamus peremptory and orders respondents to accept relator’s application for delayed birth certificate be and the same is hereby reversed, and it is now adjudged and decreed that there be judgment in favor of respondents and against relator amending the judgment so as to recall the alternative writ of mandamus and dismiss relator’s suit, and as thus amended and in all other respects, the judgment is affirmed at relator’s cost.
Reversed in part; amended and affirmed in part.