125 So.2d 375

STATE of Louisiana ex rel. Ralph DUPAS

v.

CITY OF NEW ORLEANS et al.

No. 44118.

Dec. 12, 1960.

Rehearing Denied Jan. 9, 1961.

Sam Monk Zelden, Max Zelden, New Orleans, for relator.

Alvin J. Liska, City Attorney, John F. Connolly, Asst. City Atty., New Orleans, for respondents-appellees.

HAMLIN, Justice.

Acting under our supervisory jurisdiction (Article VII, Section 11, Louisiana Constitution of 1921, LSA), we granted certiorari to review a judgment of the Court of Appeal, Parish of Orleans, (102 So.2d 77), which dismissed the suit of relator, Ralph Dupas; affirmed the judgment of the trial court, insofar as it overruled exceptions of no right of action and ratione materiae filed by respondents, City of New Orleans, et al.; and reversed that portion of the judgment of the trial court which made the alternative writ of mandamus peremptory and ordered respondents to accept relator's application for a delayed birth certificate.

That portion of the judgment of the trial court making the alternative writ of mandamus peremptory—reversed by the Court of Appeal, Parish of Orleans—reads as follows:

"It Is Further Ordered, Adjudged and Decreed that the alternative writ of mandamus heretofore issued herein be now made peremptory, and accordingly that De Lesseps S. Morrison, Mayor of the City of New Orleans, and Dr. Boni J. Delaureal, Chairman and Registrar of Vital Statistics for the Board of Health for the City of New Orleans, be directed and commanded to accept the application for delayed birth certificate, to register same and to deliver a delayed certificate of birth unto Relator, Ralph Dupas, showing him to be a member of the white race, born on October 14, 1935, in the City of New Orleans, the issue of Peter Dupas, Sr., and Evelyn Foto."

We granted certiorari primarily to review the ruling of the Court of Appeal which held that City Exhibit No. 1, a photostat of the original birth certificate (No. 24,795 of the records of the State of Louisiana, Bureau of Vital Statistics, Parish of Plaquemines, City of Davant, for the year, 1935), of Ralph Duplessis, alleged to be born on October 15, 1935, at Davant, Parish of Plaquemines, Louisiana, of the union of Peter Duplessis and Eveline Duplessis, was admissible in evidence. Because of its appreciation of the testimony elicited with respect to City Exhibit No. 1, the trial court held that said exhibit was inadmissible.

Alleging that he was the legal issue of the marriage of Peter Dupas and Evelyn Foto and that he was born in the City of New

Orleans on October 14, 1935, Ralph Dupas filed suit in the Civil District Court for the Parish of Orleans, praying for a delayed certificate of birth. To substantiate his allegations, relator presented testimonial evidence in the trial court which shall be later discussed in this opinion. Respondents' contention that Ralph Dupas was born in the Parish of Plaquemines and not in the City of New Orleans was predicated mainly on City Exhibit No. 1, supra. They contended that the Ralph Duplessis whose birth is recited in the exhibit is the same person as relator, Ralph Dupas.

The birth certificate of Ralph Duplessis (City Exhibit No. 1), was signed by Mrs. Hy Duplessis.[1] She testified that she was a registered midwife and had moved to Davant, Parish of Plaquemines, Louisiana, during 1928 and had lived there up until the time of trial; that she filled out the certificate, except for that part reciting the race or color of the parents of Ralph Duplessis. She identified her signature and affirmatively stated that she delivered the child set forth in the certificate. She said she did not have an independent recollection of the birth of Ralph Duplessis. She stated that after she filled out the certificate she turned it over to Mrs. Lucretia Gravolet,

Registrar, who sent it to the State Board of Health. She said that the family of a new baby did not receive a certificate.

The birth certificate of Ralph Duplessis, supra, was filed in the Office of the Local Registrar at Davant, Plaquemines Parish, Louisiana, on November 11, 1935, and it was there signed, "L. Gravolet, per B. C. G." Mrs. Lucretia Gravolet testified that she was a schoolteacher in Davant and was also postmistress there from 1927 to the end of the 1930's; that because of her position as postmistress, she was able to secure extra employment from the State of Louisiana acting as Registrar of Births and Deaths until the end of the 1930's and as such recorded births and deaths in the area. Mrs. Gravolet said that in 1935 she had an eighteen year old son, Benedict, who was a smart boy; that he worked in her office during her absence and was authorized by her to sign birth certificates. She admitted that her son signed the birth certificate of Ralph Duplessis, stating that it was the official record furnished by her to the State Board of Health.

■ The trial judge found that the above testimony was insufficient to constitute the birth certificate of Ralph Duplessis a public record.[2]

---

1. Mrs. Hy (Henry) Duplessis was Mrs. Herbert Duplessis at the time of trial; she was no relative of anyone connected with this case.

2. " * * * However, in view of the testimony elicited with respect to the preparation of the birth record of Ralph Duplessis, *City 1*, it is inadmissible as an official public record. Mrs. Lucretia Gravolet, the registrar whose signature purportedly appears at the bottom of this certificate, admitted that her son,

The Court of Appeal, Parish of Orleans, found that the birth certificate of Ralph Duplessis was not a delayed certificate as spoken of in LSA–R.S. 40:159, nor did it appear or had it been shown that it was an altered certificate. The Court of Appeal said that it would consider the certificate along with the other evidence of record, holding that in accordance with the clear provisions of the statute, the certified copy thereof must be received by the court as prima facie evidence of the facts therein stated, simply meaning that if not rebutted or contradicted, the facts stated were to be taken as having been proved.

LSA–R.S. 40:159 provides:

"A. Except for delayed or altered certificates, every original certificate on file in the division of public health statistics is prima facie evidence of the facts therein stated. Data pertaining to the father of a child are such evidence, if the alleged father is, or becomes, the husband of the mother in a legal marriage; if not, the data pertaining to the father of a child are not

an eighteen year old boy who had no official position as registrar or deputy registrar at that time, may have signed her name, inasmuch as the notation 'Per B. C. G.' clearly appears beneath the signature on the original document. Mrs. Gravolet had specifically identified this very signature as her own shortly before the Court called her attention to the notation. An examination of the original document in light of Mrs. Gravolet's testimony leaves no doubt

such evidence in any civil or criminal proceeding in a manner adverse to the interest of the alleged father, or of his heirs, legatees, or other successors in interest, if the paternity is controverted.

"The contents, or part of the contents, and the due execution of any certificates on file in the division of public health statistics may be evidenced by a copy of the material contained in the certificate as certified by the state registrar. Certified copies shall be admitted as evidence under the same conditions as the original.

"The admissibility in evidence of a delayed or altered certificate is subject to the discretion of the court, judicial or administrative body, or official to whom it is offered as evidence.

"B. The originals of all certificates of birth or death or the certified copies thereof, certified by the local registrar for the parish of Orleans or his deputy, on file in the office of the local registrar for the parish of Orleans, are

that her son who held no official position actually signed this document for her and registered this alleged birth. An additional irregularity in the preparation of this document was noted by the testimony of Mrs. Herbert Duplessis, the midwife who although she had no independent remembrance of the occasion or the identity of the individuals nevertheless identified the document and confirmed the deliveries * * * of Peter Duplessis and Ralph Duplessis. * * "

admissible in all courts as prima facie evidence of the facts therein stated."

LSA–R.S. 40:243 recites:

"A certificate of the birth shall be filed with the local registrar within ten days after the date of each birth.

"Where a physician, midwife, or person acting as midwife was in attendance upon the birth, he shall file the birth certificate herein required.

"Where there was no physician, midwife, or person acting as midwife in attendance upon the birth, the father or mother of the child, the householder or owner of the premises where the birth occurred, or the manager or superintendent of the public or private institution where the birth occurred, in the order named, shall, within ten days after the date of such birth, report to the local registrar the fact of the birth.

"In the case set out in the preceding paragraph or in case the physician, midwife, or person acting as midwife in attendance upon the birth is unable, by diligent inquiry, to obtain any particular item or items of information called for in the birth certificate, the local registrar shall secure from the person so reporting or from any other person having the required knowledge such information as will enable him to prepare the birth certificate. Each person questioned by the registrar in this respect shall answer, correctly and to the best of his knowledge, all questions put to him by the local registrar calculated to elicit any information needed to make a complete record of the birth. The informant as to any statement made in accordance with this Section shall verify his statement by his signature when requested to do so by the local registrar."

"Prima Facie. Latin words which have, by long usage, become a part of the English language, and the meaning of which is readily understood by a person of common understanding. They are words of very common use in the courts and in newspaper reports of judicial decisions, and they import that the evidence produces for the time being a certain result, but that the result may be repelled. They have been defined as meaning apparent. They have further been defined as meaning as it first appears; at first sight; at first view; on its face; on the face of it; on the first appearance; presumably; so far as can be judged by the first disclosure." 72 C.J.S. Prima Facie, p. 499; see, Martin v. Breaux, 165 So. 743.

"*Prima facie evidence* is that which, either alone or aided by other facts presumed from those established by the evidence, shows the existence of the

fact which it is adduced to prove, unless overcome by counter evidence; evidence which, unexplained or uncontradicted, is sufficient to maintain the proposition affirmed. Prima facie evidence is sufficient, unless contradicted by other evidence, to establish for all purposes the existence of a fact in issue; that is, it is sufficient to satisfy the burden of proof and to support a verdict in favor of the party by whom it is introduced when not controverted by other evidence. It may be rebutted or contradicted by other evidence, and, unless there is no other controlling evidence and no discrediting circumstances, it is not conclusive and does not require a verdict for the party whose contention it supports." 32 C. J.S. Evidence, C. XXI, Weight and Sufficiency, A. Degree of Proof, § 1016, pp. 1040–1041.

■ We do not find that the certificate of birth of Ralph Duplessis was a delayed certificate within the meaning of LSA–R.S. 40:159; nor do we find that it was altered in any respect insofar as the place of birth of Ralph Duplessis is concerned. During the course of twenty-one years it was on file with the Louisiana State Department of Health, Public Health Statistics. City Exhibit No. 1, supra, is also certified by A. Ciaccio, State Registrar, Louisiana State Department of Health, Division of Public Health Statistics. The Court of Appeal properly held that City Exhibit No. 1 was a public record and should be received as prima facie evidence of the facts therein stated.

Counsel for relator urge that City Exhibit No. 1 was erroneously and illegally executed. They argue:

"* * * R.S. 40.243 is authority for the proposition that the person in attendance of birth of child shall fill out certificate. (Of course, referring to physicians, midwives, etc.) The local registrar of birth shall fill out birth certificates only when proper person does not or cannot act.

"From whence, did Lucretia Gravolet, the local registrar secure legal authority or justification for filling out the certificate under any circumstances. Proceeding from that point, if Mrs. Gravelot the local registrar had no legal authority to fill out the certificate, under what possible stretch of imagination could authority be justified in permitting her 18 year old son to fill out the said certificate, sign his mother's name, and affix his own initials below."

To substantiate the above contentions, counsel rely on the case of Succession of Lapene, 233 La. 129, 96 So.2d 321.

Act 257 of 1918, in force and effect in 1935, provided in Section 4:

"Each Local Registrar so appointed by the State Board of Health shall, immediately upon his acceptance of appointment as such, appoint a deputy, whose duty it shall be to act in his stead in case of his absence or disability; and such deputy shall in writing accept such appointment, and be subject to all rules and regulations governing Local Registrars. And when it appears necessary for the convenience of the people in any rural district, the Local Registrar is hereby authorized, with the approval of the State Registrar, to appoint one or more suitable persons to act as sub-registrars, who shall be authorized to receive certificates and to issue burial or removal permits in and for such portions of the district as may be designated; * * *"

■■ Under the provisions of the above quoted act, we cannot find that Benedict Gravolet was a duly constituted deputy or sub-registrar as contended for by respondents. We do find, however, that Mrs. Gravolet had the right and was authorized under Act 257 of 1918 to appoint her son as her assistant; this she did. The failure of the son to accept the appointment in writing and the failure of Mrs. Gravolet to secure the approval of the appointment by the State Registrar did not preclude Benedict Gravolet's assuming the status of a de facto officer.

"A person is a de facto officer where he exercises the duties of an office under color of a known and valid appointment or election, but where he failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like. Vide, 'Public Officer,' 22 R.C.L., Sec. 306, p. 588.

"A de facto officer is no more a usurper than is a de jure officer. As long as he is in possession of the office he will be a de facto officer, and all acts performed by him in the exercise of his official functions and strictly within the limits of existing statutes will be considered legal. This is from considerations of public policy." State v. Hargis, 179 La. 623, 154 So. 628, 629.

" * * * the jurisprudence of this State is well-established that the acts of an officer de facto, so far as they affect the public, should be recognized as valid. * * *" State v. Breedlove, 199 La. 965, 7 So.2d 221, 230. See, State v. Mayeux, 228 La. 6, 81 So. 2d 426.

An application of the above jurisprudence to the facts of record impels us to conclude that Benedict Gravolet was a de facto officer. No attack was made upon his intellectual capacity or upon his ability to act as he did when City Exhibit No. 1

was executed. He has not been discredited. It might also be remarked that—

."It is also well settled that the right of a de facto officer to exercise the functions of an office cannot be attacked collaterally, but that a direct proceeding to try title to the office is necessary. * * *" Feinblum v. Louisiana State Board of Optom. Exam., La.App., 97 So.2d 657, 661. See, State v. Schuermann, 146 La. 110, 83 So. 426; State v. Taylor, 172 La. 20, 133 So. 349; Williams v. Police Jury of Concordia Parish, 160 La. 325, 107 So. 126.

The record is devoid of any allegation of fraud or bad faith with respect to City Exhibit No. 1, supra. We do not find any merit in relator's contention that it was erroneously or illegally executed insofar as the place of birth of Ralph Duplessis is concerned. The case of Succession of Lapene, supra, is not apposite.[3] That case involved heirship in a succession matter; we held that certain interlineations, contained in a statement signed by the Ex-Officio Recorder of the Board of Health for the Parish of Orleans, could not be accepted as correct as there was no proof of record as to their authenticity. We conclude that the birth certificate of Ralph Duplessis (City Exhibit No. 1 herein), must be considered along with the other evidence contained in the instant record.

■ The Court of Appeal stated that after sifting, analyzing and digesting the contents of the sizeable record, there was only one logical conclusion it could reach

3. In their brief, counsel for relator make the following statement: "This court in the case of the Succession of Lapene [233 La. 129], 96 So.2d 321, said: 'Changes or alterations in birth or death certificates render same inadmissible when there is no proof in the record as to the authenticity of said changes or alterations and no proof under and by that authority said alterations were effected.'"

We have carefully examined our opinion in the Succession of Lapene, 233 La. 129, 96 So.2d 321, and find that counsel were mistaken in quoting the above paragraph as being in our opinion.

In the Succession of Lapene, we were discussing the certificate of death of Jules Numa Lapene in a suit involving heirship and made the following statement: "There is also in the record a statement signed by the Chairman and Ex-Officio Recorder of the Board of Health for the Parish of Orleans, to the effect that an undertaker appeared before him and declared that Jules Numa Lapene, aged 47 years, died at his residence 3726 Bienville Street, New Orleans, Louisiana, on December 1, 1904. This certificate states that Jules Numa Lapene was a native of France, and that he was of the white race. A line is drawn through the word, 'White,' and over it is written in print the word, 'NEGRO.' A line is also drawn through the word, 'France,' and by its side is written in print the words, 'New Orleans, La.' We cannot accept these interlineations as correct. There is no proof in the record as to their authenticity; nor does the record disclose by what authority they were made. They are of a different type of writing—print—whereas, the certificate is written in longhand."

and that was that Ralph Dupas is the same Ralph Duplessis who was born to Peter Duplessis and Eveline Duplessis in Davant, Parish of Plaquemines, on October 15, 1935. It concluded that relator did not prove that his birth took place in the Parish of Orleans, and that the officials of the City of New Orleans could not be ordered to issue a birth certificate to him.

We have likewise read the testimony of record and find that the Court of Appeal was eminently correct in its analysis of the testimony and in its conclusions of fact. Because of the importance of this matter, we quote with approval the pertinent parts of the analysis and recitation of testimony by the Court of Appeal (102 So.2d 77, 79):

"In support of his claim that his birthplace is New Orleans, the most important evidence relator introduced was elicited from Mrs. Harold J. Powell, a close friend and neighbor of Evelyn Dupas, who testified that she actually observed the birth on the evening of October 14, 1935, in the Dupas home at 620 Mandeville Street, after she and Evelyn Dupas had returned from a theater. The witness stated that the event transpired before she could even summon the midwife, Mrs. Legendre, who had previously been engaged by Evelyn Dupas.

"A man named Enos V. Russell, another of relator's witnesses, also testi-

fied that he was born in New Orleans. Russell's testimony is that his half sister, Mrs. Loretta Legendre, a graduate midwife, attended Mrs. Dupas, whom he personally knew, during her pregnancy with relator, and that the birth took place at the mother's home on Mandeville Street rather than at his sister's maternity home. Russell insists he handled some of his sister's business and that he remembers relator's birth because it took place shortly before Armistice Day, the date on which his own son was born.

"Other testimonial evidence introduced by relator emanated from his mother and father, the mother testifying that relator was born in a house on Mandeville Street, and the father stating that all of his children, including relator, were born in New Orleans. Another witness, Josephine St. Ann Duplessis, an aged woman, late of the Parish of Plaquemines, but now a resident of New Orleans, about whom some comment will be made later herein, testified she is the foster mother of Evelyn Dupas, and that her said foster daughter immediately upon her marriage with Peter Dupas moved from the Parish of Plaquemines with him to New Orleans, and that New Orleans has been their home ever since.

\*     \*     \*     \*     \*     \*

"In an effort to bolster 'relator's contention that the City of New Orleans is his birthplace, there was introduced on his behalf the inscription on the records of Sts. Peter and Paul Church, which reflects that on November 27, 1935, one Ralph Salvador Dupas, son of Peter Dupas and Evelyn Foto, born October 14, 1935, was baptized by the pastor. * * * Notwithstanding that the church record alluded to contains no information whatever as to where the person baptized was born, we find in the record two certificates issued from Sts. Peter and Paul Church attested to by Fr. Boeshans which are not in keeping with the baptismal register and are unexplainably in conflict with each other. The first of these documents sets forth that Ralph Salvador Dupas, child of Peter Dupas and Evelyn Foto, born the 14th day of October, 1935, in St. Bernard Parish, Louisiana, was baptized on the 27th day of November. Subsequently, Fr. Boeshans issued another certificate identical in all respects to the above except that the place of birth is stated to be in New Orleans. This latter certificate bears the date August 5, 1957.

"In order to further corroborate his contention, relator also offered in evidence records of the Orleans Parish School Board beginning in 1941, which carry notations to the effect that relator's birthplace is New Orleans.

\*     \*     \*     \*     \*     \*

"Relator denies that his surname is Duplessis and Peter Dupas, his father, claims his name has always been Dupas. Evelyn Dupas admits that before coming to New Orleans with her husband she lived in Davant in the Parish of Plaquemines, but she denies that her maiden name was Duplessis and insists it was Foto.

"Anent Peter Dupas, relator's father, the evidence established to the entire satisfaction of the trial court that he is the same person as the Pierre Theodore Duplessis whose baptism is inscribed in the records of St. Katherine's Church, New Orleans. The judge made mention of the fact that said person is also shown on the records of the Orleans Parish School Board under the name 'Peter T. Duplesi.' We are heartily in accord with the trial judge's conclusion as to the identity of Peter Dupas.

"Notwithstanding that relator's mother proclaims that her maiden name was Foto, we have no doubt she was before her marriage Eveline Duplessis. No kinship exists between her and Pierre Theodore Duplessis despite their identical surnames.

"Mention has previously been made of the aged woman Josephine St. Ann Duplessis, who appeared as one of relator's witnesses and who claimed to be the foster mother of Evelyn Foto Dupas. Her testimony is that Evelyn Dupas was a foundling left with her at an early age. The witness claims she was Josephine St. Ann and married twice, firstly Clebert Maturin Duplessis, who died, and secondly Myrtille Duplessis. Her story is that while seated on her porch in the Parish of Plaquemines one day a man, whom she had never before seen, passed by the house with a baby girl in his arms and 'he asked me if I wanted to hold the little baby until he came back, one day or two days, and he never did show up.' She says she had three children of her own at the time and kept the child calling it Eveline, and raised it with her own children until the time Eveline left with Peter Dupas to live in New Orleans. Josephine St. Ann Duplessis says the man who deserted the child told her its mother had died and that his name was Foto. She has never seen the man since.

"A suspicious circumstance is that Josephine St. Ann Duplessis kept the child's identity a secret down through the years and never confided the nature of its origin to anyone—not even her own children. She did not apprise Eveline of the facts until she 'got big.'

"Stranger still, and tending to entirely refute Josephine St. Ann Duplessis' narrative as to Eveline being a foundling, is the fact that although she unequivocably disclaimed that she is the mother of the child, yet Josephine St. Ann Duplessis admits she had the child baptized. She said the child 'was not baptized; I baptized her.' Placed into the evidence by respondents is the original baptismal entry on the records of St. Thomas Church, Pointe-a-la-Hache, dated June 25, 1916, which shows the child Eveline Agnes Duplessis to be the legitimate daughter of Marthurin Klebert Duplessis and Josephine St. Ann, and reflects the baptism as having taken place only sixty-two days after the date of birth stated in the entry, which is irreconcilably in conflict with the claim that the child was about eighteen months old when the man gave her to Josephine St. Ann Duplessis.

"The testimony of Evelyn Dupas stands in drastic contest to that of her so-called foster mother as to where the former had been born. Josephine St. Ann Duplessis swore that she had no information from the man as to the child's birthplace, yet Mrs. Dupas testified that her foster mother told her that her birth had taken place in Lake Charles.

"Mr. Ciaccio, State Register of Vital Statistics, appearing on behalf of respondents, testified that when attempts were made on behalf of Ralph Dupas to obtain a delayed birth certificate from the State Bureau of Vital Statistics, he proceeded to the Parish of Plaquemines for the purpose of making an investigation of the applicant, during the course of which, December 1954, he located the baptism certificate of Eveline Agnes Duplessis in St. Thomas Church. Mr. Ciaccio points out that a certain marginal notation appears on the photostat of the original entry offered in evidence by respondents which did not appear on the original entry when he viewed it in December 1954. In support of this he produced a certified copy of the original entry attested to by the pastor of the church which does not show the existence of any marginal notation or the name 'Foto.' The marginal notation in question reads 'Foto marriage convalidated in St. Mary's Italian Church N. O. to Pierre T. Dupas 10 October 1953.' Who made the notation is not known and its purpose is unexplained. But, be that as it may, there is no denial that the child baptized as Eveline Agnes Duplessis is the present Mrs. Peter Dupas.

"It might be stated that a plausible reason for the marginal notation being placed on the baptismal record is that Peter Dupas and Evelyn Foto were not married until September 29, 1953, when the ceremony was performed by a justice of the peace in the Parish of St. Bernard. This marriage was either 'blessed' or the parties remarried with religious rites in St. Mary's Italian Church in New Orleans on October 10, 1953, which is the date appearing on the margin of the baptismal record of Eveline Agnes Duplessis. She was married under the name of Evelyn A. Foto.

"We have heretofore referred to the baptism of Pierre Theodore Duplessis in St. Katherine's Church, New Orleans. The entry thereof in the church records also reflects that a marginal notation had been written in on the original. The transcription of evidence stipulates that on the record of the baptism of Pierre Theodore Duplessis there appears in different ink the notation 'goes under the name of Dupas' and 'married Evelyn A. Foto.'

"The marginal entries on the two certificates of baptism should present no difficulties, and we conjecture that the reason for their presence is that the respective churches in which the parties had been baptized meant to keep a record of the marriage and the names under which they married on the baptismal certificates, but, be that as it may, there is no question that the par-

ties mentioned in the baptismal certificates are the parents of the relator in the present case, and the marginal entries serve to further demonstrate that fact

"The respondents by the presentation of proper certificates have shown that there are records showing Peter and Eveline Duplessis had three children in the Parish of Plaquemines. Already discussed at length is the birth registry of Ralph Duplessis. The first child born to the couple was called Peter Theador Duplessis whose birth is recorded as having taken place on November 28, 1932. Another record on file in the State Bureau of Vital Statistics pertains to a second child born to Peter Duplessis and Eveline Duplessis, and this shows that Eveline Duplessis was delivered of a stillborn child on October 28, 1934.

"Comparing the three certificates above mentioned with those issued by the Board of Health in New Orleans respecting children subsequently born to Evelyn Dupas, there appears a bit of information which in a measure seems to connect Peter Dupas and Evelyn Dupas with the Peter Duplessis· and Eveline Duplessis to whom were born the children known as Peter Theador Duplessis, Ralph Duplessis and the stillborn child aforementioned.

"Mrs. Dupas stated from the witness stand that she had eleven living children and denied any child she bore was dead. However, upon the birth of her eleventh child in Hotel Dieu on December 11, 1956, Mrs. Dupas informed the clerk at the hospital charged with taking the required information from the mother that she had one child which had been born dead, and such information was written in the space provided therefor on the eleventh child's birth certificate. The clerk states that Mrs. Dupas signed the certificate with her husband's name 'Peter Dupas.'

"We are inclined to believe that the incidence of the stillborn child has some pertinency to the issue with which the court is concerned. It is shown that Peter Duplessis and Eveline Duplessis had a stillborn child in the Parish of Plaquemines, and it is a fact that Mrs. Evelyn Dupas stated to the clerk in the Hotel Dieu that she had one child which was stillborn.

" * * * He [Peter Dupas] disclaimed any connection whatsoever with the Parish of Plaquemines, and when asked if his wife ever lived there answered, 'Not that I know of.' The record bears out the fact that Evelyn Dupas was raised in Plaquemines Parish and that Peter Dupas well knew of that fact. His denials that he ever lived

in the Parish of Plaquemines are glaringly in conflict with the testimony of Evelyn Dupas that both she and her husband 'came from Plaquemines.'

"The denials of relator's parents that they ever lived in Plaquemines after marriage or that any of their children were born there do not stand up in the light of countervailing evidence given by three reputable witnesses produced by respondents.

"Mrs. Gravolet, a lady 75 years old, who has lived in Davant all of her life and has served as a school teacher and principal for thirty-five years, postmistress, and registrar for the State Board of Health for a number of years, testified that she has 'always known the Duplessis family' and identified Evelyn at the trial. She states she lived near the family and that Eveline's sister was nurse to Mrs. Gravolet's son and Eveline would come to her home on occasions. Mrs. Gravolet also states she knows Eveline's husband, Peter, and saw him nearly every day when he was courting Eveline. The witness also testified she knows Ralph Dupas, and that sometimes he would visit his grandmother in Plaquemines Parish, and that the Ralph Dupas she refers to is the same person she saw in court. Most importantly Mrs. Gravolet states that she observed the pregnancy of Evelyn Dupas, whom she identified as Eveline Duplessis, before the birth of the child, Ralph Duplessis, who was registered with her as having been born in Plaquemines Parish on October 15, 1935.

"John Ansardi, formerly a resident of Plaquemines Parish, who is engaged in business as an automobile dealer in Buras, states he knows Peter Duplessis, whom he identified in the courtroom, and that this man worked for the witness' brother and trapped his lands in Plaquemines Parish. It would not be amiss to state here that the birth certificate of Ralph Duplessis sets forth that Peter Duplessis, father, was a 'trapper.' John Ansardi mentioned that Peter 'had children,' and also stated that he knows Peter's wife Evelyn.

"Heard Ansardi, deputy sheriff and property manager, also a lifetime resident of Davant, testified that he has known Ralph Duplessis from babyhood and that Ralph's mother and father, Peter and Evelyn Duplessis, lived only a short distance from where he formerly lived. He referred to Peter Duplessis as 'Pete' and states he has been acquainted with him from childhood. He remembered that two children were born to the Duplessis couple, Peter, Jr., and Ralph, and that he observed Evelyn's pregnancy with Ralph. He went on to state Ralph

Dupas, the prize fighter, is the same Ralph Duplessis who was born to Evelyn in Plaquemines Parish. He also mentioned that the Dupas family left Davant but from time to time would return on visits.

\* \* \* \* \* \*

"The testimony of the witness Russell is not impressive. He is an usher at the prize fights in New Orleans and is acquainted with Ralph Dupas's fight manager. We cannot deem the mother and father of relator or Josephine St. Ann Duplessis credible witnesses. Even if we could possibly discern some apparent truth in what they said, the value of their testimony would be to a large degree lessened by the fact of their relationship to relator and their interest in the case and zeal on his behalf. On the other hand respondents' principal witnesses, Mrs. Gravolet, John Ansardi and Heard Ansardi, appear to be persons worthy of belief, and it is beyond us to understand what possible interest they could have in the outcome of the case or what ulterior motives would prompt them to testify as they did."

Counsel for relator urge that the Court of Appeal was in error in reversing the trial judge's findings of fact.

■■ We are aware of the age old rule, which does not require the citation of authority for its affirmation, that the judgment of the trial court on a question of fact will not be reversed by an appellate court unless it is manifestly erroneous; this rule, however, does not deprive an appellate court of its jurisdiction upon both the law and the facts. Article VII, Section 29, Louisiana Constitution of 1921. In the instant matter, the Court of Appeal found that the findings of fact of the trial court on the question of the place of birth of relator were not correct. The duty, therefore, rested upon the Court of Appeal to reverse the findings. Fridge v. Talbert, 180 La. 937, 158 So. 209; Schramm v. Toye Bros. Yellow Cab Co., La.App., 169 So. 116; Owens v. Felder, La. App., 35 So.2d 671. Herein, the Court of Appeal properly considered the birth certificate of Ralph Duplessis along with the other evidence of record; the birth certificate was not considered by the trial court. The additional evidence was undoubtedly an influential factor in the findings of fact by the Court of Appeal. As stated supra, we have reviewed and adopted the findings of fact of the Court of Appeal, which we believe to be eminently correct.

■ Counsel for relator urge that the Court of Appeal was in error in ordering them, in argument before that Court, to con-

fine themselves solely to the exception of jurisdiction ratione materiae.

We find no error in the ruling of the Court of Appeal; the question of the place of birth of relator stood at the threshold of the case, and the Court of Appeal was correct in directing its immediate attention to it. State v. Laborde, 233 La. 556, 97 So.2d 393.

Having found that Ralph Dupas, relator, was the same Ralph Duplessis who was born to Peter Duplessis and Eveline Duplessis in Davant, Parish of Plaquemines, on October 15, 1935, and having found that said relator did not prove that his birth took place in the Parish of Orleans, the Court of Appeal properly found that it could not order the officials of the City of New Orleans to issue a birth certificate to relator.

For the reasons assigned, the judgment of the Court of Appeal, Parish of Orleans, is affirmed.

HAMITER, J., dissents with written reasons.

HAMITER, Justice (dissenting).

In the course of his well considered written reasons for judgment in this cause the trial judge found, observed and concluded (among other things) as follows: "After a careful consideration of all of the evidence bearing on the place of Relator's birth, it is

the opinion of this Court that a preponderance of the evidence favors Relator's contention that he was born in the City of New Orleans.

"The ·next point to be considered is the race or color of Relator. The principle of law with respect to degree of proof required in the present case depends largely upon whether Relator has been accepted as a member of the white or caucasian race during his lifetime. Evidence on this point seems overwhelmingly in support of an affirmation to the foregoing question. Relator is a lifelong resident of the City of New.Orleans. * * * Since kindergarten, which he entered at the age of 5, and continuously through grammer school and high school, he has been registered and accepted as white in the white schools of the City of New Orleans. * * * He has during his lifetime availed himself of the public facilities reserved to members of the caucasian race. * * * He has been accepted by schoolmates.

\* \* \* \* \* \*

"Determining that Relator has been accepted as a white man, this Court is constrained to apply to the evidence presented on the question of race, the principle of law with respect to degree of proof announced in the Louisiana Supreme Court decision, Sunseri v. Cassagne, 191 La. 209, 185 So. 1 .(1938), and as construed in the Louisiana Court of Appeal cases, Orleans Circuit, State ex rel. Treadaway v. La. State Board

of Health, 56 So.2d 249 (La.App.1952) and Green v. City of New Orleans, 88 So.2d 76 (La.App.1956). The principle, as deduced from the Sunseri case by the Orleans Court of Appeal, is that the litigant, who has been commonly accepted as being caucasian, should not be declared a member of the negro race unless all the evidence adduced leaves no room for doubt that such is the case. And this has been construed in the Treadaway case, supra, to mean that the proof in such cases should be even more convincing than that which is necessary in such cases as must be proved 'beyond a reasonable doubt.'

\*    \*    \*    \*    \*    \*    .

"After serious consideration of all of the evidence presented, this Court believes that the City of New Orleans has failed to establish beyond a reasonable doubt that Relator, a man who has been commonly accepted as caucasian, is in fact of colored ancestry in either his maternal or paternal lineage."

The quoted findings, observations and conclusions of the trial judge, who saw and heard the numerous witnesses give their conflicting testimony, are amply justified by the record and by the jurisprudence of this state. Consequently, it is my opinion that his judgment should be reinstated and made the decision of this court, it having rendered peremptory the previously issued alternative writ of mandamus and ordered respondents to furnish to relator the delayed birth certificate for which he applied.  .