LOTTINGER, Judge.
This is a suit for personal injuries resulting when the petitioner’s minor daughter received a pistol wound while riding as a passenger in a taxicab. The petitioner is Hattie Ward Bynum, the mother and Natural Tutrix of her injured minor daughter, Alice Mae Ward Bynum. The defendants are Robert Wiggins, the father of the minor boy, Theodore Roosevelt Wiggins, who inflicted the wound upon the young girl, Leroy Johnson, the driver and operator of the taxicab, Thomas Wicks, the owner of the taxicab, and The Travelers Insurance Company, the insurer of the taxicab. The Lower Court awarded judgment in favor of petitioner and against the defendant, Robert Wiggins, in the sum of $1,474, as well as a judgment in favor of Charity Hospital in New Orleans against the defendant, Robert Wiggins, in the sum of $194.56; the suit was dismissed as against the other defendants. Petitioner has taken this appeal.
The record discloses that on the early morning of July 8, 1956, Leroy Johnson, an employee of Thomas Wicks, was driving a taxicab which belonged to Thomas Wicks, who was doing business as Wicks Cab Company in the city of Baton Rouge, Louisiana. Leroy Johnson picked up three colored boys, among whom was included Theodore Roosevelt Wiggins, and the four drove around the city of Baton Rouge looking for night clubs which might be *478 open at that late hour. They stopped on a couple of occasions to have a drink; Theodore Roosevelt Wiggins testified that he had a couple of beers, however, Leroy Johnson testified that he did not have anything to drink and Wiggins corroborated Johnson in such testimony. Later in the morning, two of the boys left the cab, one of them paying the fare for all three. Wiggins remained with Johnson and they continued driving around the city of Baton Rouge looking for clubs that might be open. While driving around, Leroy Johnson noticed that Roosevelt Wiggins was holding a revolver in his hand and he warned Wiggins to put the gun away, whereupon Wiggins placed the gun in his shirt.
Shortly thereafter, Alice Mae Bynum came to the taxicab while it was stopped at a red light in the vicinity of the Jackson Seafood House in the city of Baton Rouge. She claims that she told Johnson to drive her home. She entered the cab in the front seat and sat between Johnson, the driver, and Wiggins, the other passenger in the taxicab. Alice Mae Bynum was an acquaintance of Wiggins and she offered him half of a ham sandwich which she was taking home and they each commenced eating upon the sandwich. Johnson then stopped the cab at the Jackson Seafood House and told the other two occupants that he was going to get a sandwich or a cup of coffee and that he would be back in a few minutes.
While young Wiggins and young Bynum were alone in the cab, Wiggins again pulled the gun from out of his shirt. He ■claimed that he was only teasing the girl, however, the girl claims that Wiggins ordered her to give him some money. In any event, the gun was fired by Wiggins and the young girl was shot in the abdomen. Wiggins then ran into the restaurant and told Johnson what had happened and the two drove her to Baton Rouge General Hospital where the young girl underwent surgery.
The petitioner, who is the mother and Natural Tutrix of the .injured girl, filed this suit against Wiggins as well as Johnson, the driver of the taxicab, his employer, and the employer’s liability insurer. Petitioner seeks damages of some $30,000. The Lower Court awarded judgment in favor of petitioner and against the defendant Wiggins in the amount of $1,000 for physical injury, pain and suffering, plus $224 as expenses at Baton Rouge General Hospital, $150 as expenses for Dr. Gordon W. Peek, $50 each as expenses for Drs. Harrison and Williams, and $194.56 for the intervener herein, Charity Hospital of New Orleans, as well as Court costs. Petitioner has appealed asking that the award be increased, and asking further that the judgment dismissing the suit as against Johnson, Wicks and his insurance company should be reversed.
The record discloses without any doubt that Leroy Johnson, who was driving the taxicab, was well aware of the fact that young Wiggins had been drinking prior to the time of the unfortunate accident. Wiggins himself testified that he had made several stops while riding in the cab with Johnson and the other colored boys, and that on these occasions he was drinking beer. Although it does not appear that young Wiggins • was drunk, he certainly was feeling good.
The driver of the cab noticed Wiggins playing with the revolver and, as a matter of fact, told him to put the pistol away. There is no question but that Johnson had knowledge of the gun being on the person of young Wiggins.
Subsequently, at approximately 5:30 A. M., Alice Mae entered the cab as a paying passenger, she claims that she told the driver to take her home. Although Johnson claims that she did not tell him to drive her home, that it was assumed that she would pay her fare upon alighting from the cab. We therefore have the situation where the driver of the cab had full knowledge that young Wiggins had been drink *479 ing, and that he had the gun on his person, as a matter of fact, he had been playing with it a short time prior to the accident and had been warned to put it away by the cab driver.
After the driver went into the restaurant, young Wiggins again pulled the gun out and a conversation ensued wherein he asked Alice Mae to give him half of her money. While he held the gun in his hand and the gun was pointed at the young girl, the gun was discharged by Wiggins. Whether he fired the gun intentionally or not has no bearing on this case. We certainly believe that the Lower Court erred in relieving the driver of the cab as well as his employer and the liability insurance company from liability. Under the circumstances of this case, we feel that Leroy Johnson, the driver, was guilty of the grossest type of negligence.
Under the law of Louisiana, a carrier has the duty of exercising the highest degree of care to his passenger, so that any infracture or a dereliction of duty, however slight, which has a causal connection with the accident, renders the cab company and its operator responsible for the damages to the passenger. Eleazer v. Illinois Central Railroad Company, La.App., 24 So.2d 387.
American Jurisprudence, Volume 10, Carriers, Section 1439, provides as follows :
“A carrier is liable for injuries inflicted upon one of its passengers through the negligence or wilfulness of a fellow passenger or a stranger when, by the exercise of proper care on its part, the act of violence might have been foreseen and prevented.”
Section 1441 further provides:
“A carrier is liable for acts of misconduct or improper conduct on the part of its passengers or strangers resulting in injury to a fellow passenger only in the event that the employees of the carrier knew, or, in the exercise of due cafe, should have known of the imminency of the tort and failed to prevent its occurrence after a sufficient opportunity to do so. It is not essential that the employee of the carrier possess actual knowledge to the effect that improper conduct is about to take place if, with the exercise of proper care, he could have learned of circumstances indicating the probability of the tortious conduct or behavior.”
Section 1458 further provides:
“Knowledge of conditions which are likely to result in an assault upon a passenger or which constitute a source of potential danger imposes the duty of active vigilance on the part of the carrier’s agents and the adoption of such steps as are warranted in the light of the existing hazards.”
13 C.J.S. Carriers § 695, page 1294 says:
“ * * * while a carrier is perhaps not bound to protect its passengers from injuries by third persons to the same extent and degree as from like injuries by its own, or its agents’ or employees’, acts or omissions, yet it is the duty of a carrier, through its employees, to exercise great care and vigilance in preserving order and in guarding passengers from annoyance, violence, insult, or other misconduct threatened by fellow passengers, at least where the passenger is on a vehicle of carriage and the misconduct of a fellow passenger is actually foreseen; and where the carrier, through its agents or employees, knows, or has opportunity to know, of a threatened injury by a fellow passenger, or might' reasonably anticipate the happening of such an injury, and fails or neglects to take the proper precautions or to use proper means to prevent or mitigate such injury, it is liable therefor.”
*480 Although there is some evidence to the effect that the injured girl had been dating Wiggins prior to the time of the accident, which fact has been stressed by the defendants herein, we fail to see where this would make any difference. The record fails to disclose that Leroy Johnson knew that his passengers had dated on occasions. The record does disclose that he knew that the boy had been drinking and that he knew he was carrying a revolver. We believe that he was negligent in failing to protect his paid passenger from an assault which could have been reasonably foreseen under the circumstances.
As to quantum, the record shows that shortly after the girl was shot, she received major surgery consisting of a colostomy. The bullet had entered the right upper quadrant of the abdomen and was lodged below her ribs on the left side. Dr. James E. Williams and Dr. George W. Peek testified that the operation was a major one and was of a very painful nature. The bullet was still lodged in the young girl’s body at the time of the trial. The record shows that a second surgical procedure was necessary, and that altogether the young girl had spent over a month in hospitals. After being discharged from the hospitals, she was confined to her bed at home for a few weeks. The Trial Judge in his written opinion indicated that the award should be greater, however, because of the impecunious circumstances of the defendant, Wiggins, the award was grossly inadequate. Considering the serious nature of the injury, which necessitated two surgical procedures and will necessitate a third procedure for the removal of the bullet, together with the pain, suffering and inconveniences imposed, we believe that an award of $4,000 should be justified. In addition thereto the medical bills, as granted below, will be awarded.
For the reasons hereinabove assigned the judgment below is amended so as to provide for damages in favor of petitioner and against all defendants, jointly and severally, in the sum of $4,000, and for medical expenses in the amount of $474, and provided further for judgment in favor of Charity Hospital in New Orleans and against all defendants, jointly and severally, in the amount of $194,56, and for all costs of these proceedings. As so amended, the judgment below will be affirmed.
Judgment amended and affirmed.