JONES, Judge.
The present suit arose as a result of a collision between an automobile and a bus in the Parish of East Baton Rouge. The plaintiff, Eva S. Adams, was a fare-paying passenger on the bus and seeks recovery from the liability insurer of said bus. Her husband, Walter Adams, the other plaintiff, seeks recovery of medical expenses incurred by his wife as well as the loss of earnings. After trial in the District Court, for the written reasons assigned, judgment was rendered rejecting the plaintiffs’ demands against defendant insurance company, and plaintiffs have perfected this appeal.
The facts herein reflect that on the morning of February 13, 1958, between the hour of 5 :30 and 6:00 o’clock, a bus which was being driven by Joe Plummer, Jr., with plaintiff Eva S. Adams a fare-paying passenger thereon, and on which bus the defendant carried liability insurance, was traveling south on Scenic Highway in the Parish of East Baton Rouge. When the bus reached a point some 100 feet north of where Kitty Street intersects with Scenic Highway, it was hit in the rear by an automobile driven by Isabel Carney. The vehicles were traveling in the same direction and both of them were in the south-bound traffic lane at the time of the collision. The weather was dry and very cold, and it was not light enough for cars to be operated without the use of lights. Isabel Carney, driver of the car which ran into the rear of the bus, testified that she had been following said bus for several blocks at a rate of speed of from 25 to 30 miles per hour; that she did not know the bus was going to stop because she did not see any brake lights; that when she did apply her brakes, they failed to hold, thereby causing her to run into the rear of the bus. There were two passengers in the car with Isabel Carney and both of them testified that on the morning of the accident, due to the cold weather, the windshield on the car was completely iced over and the only way the driver thereof could see to the front was to look out the window. None of the occupants of this car were sure whether or not the bus was moving at the time of the collision.
The evidence of Joe Plummer, Jr., the bus driver, shows that it was his intention to stop at Kitty Street in order to pick up a passenger and he had slowed his bus down to a speed of between 4 and 5 miles per hour and, while he was traveling in his proper lane of traffic at a point about 100 feet north of Kitty Street, said bus was struck from the rear by the car driven by Isabel Carney. He further testified that immediately after the bus was struck he brought it to a complete stop and his testimony relative to the bus moving at the time of the impact and his bringing it to a complete stop immediately thereafter is corroborated by the testimony of Louise Weeks who was a passenger on the bus. The plaintiff, Eva Adams, testified she did not know whether the bus was moving or not at the time of the collision.
The official report of the investigation of the accident made by two state troopers, introduced in evidence by agreement of counsel reflects that at the time of the collision the bus was “slowing or stopping”. This report shows the investigation was made by two officers, Zinna and Adams, the former having died prior to the trial. Trooper Adams testified (tr. 33) the physical facts showed the debris from the collision was at one spot in the highway, thereby indicating the bus was stopped at the moment of collision. However, we note (tr. 27) he stated in answer to a question :
“A. Yes, sir. The physical debris mostly was where we determined the point of impact.” (Italics ours)
He further testified (tr. 31) that from the physical evidence, he couldn’t determine whether or not the bus was moving at the time the accident happened.
It is shown by the evidence that the passenger Eames, who was standing on the *42 córner where Kitty Street intersects with Scenic Highway, traveled regularly on this bus. It is logical to assume that the driver of the bus was slowing down, 100 feet north of the intersecting street, in order to pick up this passenger, at the time the bus was hit from the rear. The bus driver had testified he had begun applying his brakes and immediately after the collision he brought the bus to a complete stop. We are of the opinion this is what happened and we quote with approval from the holding of the District Judge, as follows:
“Considering the fact that he was already applying his brakes, but with something less than full force, it is highly probable that the impact of the Carney car caused him to automatically and involuntarily apply them with full force, making the stopping of the bus practically coincide in point of time with the impact of the Carney car.”
It might be further pointed out that the evidence reflects that there were four lights in the rear of the bus — two of them on all the time and, when the brakes were applied, there were two ten-inch lights that came on. The word “stop” was superimposed on these lights. All of the lights of the bus were shown to have been in good working order by the testimony of the state trooper who checked them shortly after the accident and the fact that the lights were operating immediately prior to the accident was also testified to by Louise Weeks (tr. 79). The testimony of the bus driver is to the effect that he knew the Carney vehicle was following him because some distance up the road the car was four or five blocks behind him and when he got to a point where he was beginning to stop, he saw this car about a block behind him. Apparently he meant he saw the headlights from this car because the evidence shows it was dark at this time.
From the above statement of the facts, it is apparent that Isabel Carney, who was driving the following vehicle, was guilty of gross negligence in failing to see the bus and the signals thereon and was further negligent in operating an automobile with defective brakes. Of course, it was impossible for her to see the bus because the windshield of the car she was driving was coated with ice and fog. It is not the contention of plaintiffs that Mrs. Carney was not negligent but they contend the driver of the bus which was insured by this defendant was also guilty of negligence in that he stopped on a public highway and thereby did not do all within his power to avoid the accident and since a public carrier owes the highest degree of care to its passengers, under the factual situation of this case, liability attaches to the defendant herein. It is admitted by defendant insurance company that a public carrier owes the highest degree of care to its passengers and that a fare-paying passenger who is injured while on a vehicle operated by a public carrier makes out a prima facie case of negligence against said carrier and the burden of proof is on the carrier to show freedom from fault in an accident causing injury to said fare-paying passenger. There can be no question but that this is the proper interpretation of the law of this state. Coleman v. Shreveport Railways Co., La.App., 86 So.2d 590; Bynum v. Wiggins, La.App., 107 So.2d 476.
Our appreciation of the evidence, as heretofore outlined, convinces us the driver of the bus was not guilty of any negligence and that freedom from fault on his part, in connection with said accident, has been established in this record. He was keeping a proper lookout; the lights on his vehicle, which were numerous, were in good working order; he began making a gradual stop while in his right lane of traffic to pick up a passenger standing at the corner of an intersecting street, but before doing this he had looked in his rear view mirror and had seen the car driven by the Carney woman at least a block in the rear and he certainly had no reason to believe the car would not stop or go around the bus. The *43 circumstances indicate the bus was not completely stopped at the time of the collision for, in the first place, there would have been no reason for the bus to stop when it is shown that the purpose for which it was slowing down was to pick up a regular passenger who was standing on the corner of an intersecting street 100 feet south of where the collision took place. In addition to this, the bus driver, as well as one of the passengers, testified the bus was moving slowly at a rate of speed of 4 or 5 miles per hour at the time of the impact, and even though most of the debris was beneath the vehicles at the point of collision, we are satisfied, as was the District Judge, that since the driver of the bus already had his foot on the brake, the impact caused him to involuntarily press the brake immediately, thereby practically stopping the bus in its tracks. Under all the circumstances, we are of the opinion the sole and proximate cause of the accident was the gross negligence of Isabel Carney, the driver of the following car.
Counsel for plaintiff have cited several cases wherein recovery was allowed by a passenger against a public carrier and it is their contention the holdings in these cases are controlling under the factual situation presented in this case. The first of these is Bynum v. Wiggins, La.App., 107 So.2d 476; therein the factual situation showed that a passenger had been drinking and was playing with a gun; that he was warned by the driver to put the gun away; subsequently, another passenger, a girl, got into the taxicab; that the 'driver later stopped the taxicab and while he was in a restaurant the passenger with the gun discharged it injuring the girl. The court held the taxicab company liable because the carrier had failed to exercise the highest degree of care to its passenger. It is obvious that, under the circumstances, the driver should have foreseen a drinking passenger playing with a gun was likely to injure someone and, in failing to foresee and prevent the accident, the taxicab company was properly held liable. It is clear the case is not applicable under the factual situation as shown in the present case.
Next is the case of Brown v. Homer-Doyline Bus Lines, La.App., 23 So.2d 348, wherein the court found the operator of the bus, before the collision, saw an oncoming vehicle 200 yards away being operated in a reckless and erratic manner and the bus driver failed to do anything to avoid the accident. The court held the bus driver had adequate time to maneuver his vehicle out of the danger zone and his failure to do so constituted negligence on his part. There is no evidence in the present case that the driver of the bus saw that the following car was being operated in a reckless manner. As a matter of fact, he could not see the car but only the lights because it was dark and at that time the car was not being operated at a rate of more than 25 or 30 miles per hour according to the testimony of the driver Carney. Thus, the bus driver had no reason to believe the car would run into the rear of the bus. As a matter of fact, no one would expect the driver of an automobile to be operating it when he could not see through the windshield and that fact, together with the fact that the car was being operated with faulty brakes, was the sole and proximate cause of this accident.
The next case cited is Townley v. Pomes, La.App., 198 So. 788. We note the court, at page 791 of the opinion, stated the accident resulted from the negligence of the operator of the New Orleans Public Service bus for the reasons previously given in the case of Williams et al. v. Pomes, La.App., 187 So. 145. An examination of this latter case shows the reason the defendant, the public carrier New Orleans Public Service, Inc., was held liable for said accident was that the driver of the bus overtook a truck and swerved sharply in front of the truck in order to take on a passenger without realizing the close proximity of the two vehicles. For these reasons, the case is not apposite.
Accordingly, since the evidence in this record reflects the bus driver was not guil *44 ty of negligence in tlie slightest degree and has established the fact that he was free from any fault, the judgment of the lower court rejecting the plaintiffs’ demands against the liability insurer of the bus is hereby affirmed, at the cost of plaintiffs-appellants.
Affirmed.