AYRES, Judge.
This is an action in tort wherein plaintiff, a fare-paying passenger of the named defendant, sought to recover damages for personal injuries which arose out of a collision of a bus and an automobile owned and driven by C. O. Dunigan who was also made a defendant. After trial but prior to judgment, plaintiff died, and Jerry E. Rayson, administrator of her estate, was substituted as party plaintiff.
The court found the drivers of both vehicles negligent and rendered judgment in solido against both defendants for the sum of $2,373.81. This represented $263.81 as special damages, $360.00 for loss of wages, and $1,750.00 for the injuries sustained. From the judgment, only the Shreveport Transit Company, Inc., appealed, placing at issue the question of liability as well as of the quantum of the award. Plaintiff answered the appeal and prayed that the award for personal injuries be increased to $7,500.00. Neither Dunigan nor plaintiff appealed; hence, the judgment as to Dunigan is final.
The accident occurred in the intersection of the eastbound traffic lanes of the Shreveport-Barksdale Highway and Camilla Street in Shreveport. The concrete-paved, 4-lane highway, running in a general east and west course, with two lanes for traffic for each direction, each double lane being 24 feet in width, is separated by a neutral ground 40 feet in width. On each side of the highway is an asphalt-surfaced service road. Camilla Street, 40 feet in width, with two traffic lanes, one for each direction, intersects the highway at right angles. Traffic through the intersection was controlled, partially at least, by signal lights suspended overhead in the center of the respective east and west traffic lanes of the highway.
In normal operations, traffic on the highway was allowed an interval of 45 seconds to pass through the intersection. Vehicles approaching the highway from the north, when arriving at the intersection, activated a device which caused the signal over the westbound traffic lanes of the highway to reflect a favorable signal for such traffic for periods ranging from 12 to 22 seconds. The signal light suspended above the eastbound traffic lanes remained blank at all times to vehicular traffic crossing the highway from the north. Presumably, the situation was the same with reference to traffic approaching from the south as to the signal over the westbound traffic lanes.
Prior to the occurrence of the accident, the bus assigned to this run, denominated “the Veterans Hospital run,” became disabled several blocks prior to its arrival at the Camilla Street-highway intersection. A relief, or substitute, bus driven by A. E. Whaley, a supervisor for the transit company, was sent to replace the disabled bus operated by B. R. Moore, its regular operator. Plaintiff boarded this relief bus before it reached the scene of the disabled vehicle. After Moore boarded the bus, Whaley continued with its operation. When the bus reached the intersection, the signal light suspended above the westbound traffic lanes of the highway was red, *473 whereupon the bus activated the signal change device as the bus passed over it and the light thereupon changed to green. At the time of the change Whaley was conversing with another passenger concerning a transfer ticket and Moore was engaged in arranging his records in preparation for taking over the operation of the bus at some point after the bus had negotiated the intersection.
Neither Whaley nor Moore was watching the signal as it changed. However, Moore, on subsequently glancing upward, saw that it had changed and informed Whaley of the favorable signal. Whaley then observed the changed signal and started the bus from its stopped position, reaching a speed of approximately 12 m. p. h. as the bus neared the intersection with the eastbound traffic lanes.
While in the crossover between the opposing lanes, Whaley saw Dunigan’s car approaching from his right, but nevertheless proceeded to a position where he was about to emerge from the crossover when he again looked to his right and saw Duni-gan about SO to 60 feet away, driving at such speed that Whaley knew, or should have known, that Dunigan obviously intended to go on through the intersection.
Whether Dunigan had a favorable light for proceeding through the intersection is a subject about which there is considerable dispute. Whaley, in attempting to cross the eastbound traffic lanes of the highway without the aid or benefit of any signal whatever, the signal being blank to him, was not in position to know, and did not know, what signal Dunigan had. Nevertheless, the bus continued into the south-side intersection of the highway after crossing the 40-foot crossover, or neutral ground, and turned left but too late to avoid a collision.
The bus drivers, the relief as well as the regular driver, were familiar with the traffic signals at the intersection. They knew that, for crossover traffic, the time was of short duration and, to negotiate the intersection, motorists had to be alert and quick to act, particularly when attempting to negotiate the intersection from a stopped position. The intersection overall was 88 feet wide. There was no showing of what time elapsed after the light presented a favorable signal before the bus began to move into the intersection.
The intersection with which we are concerned should perhaps be treated as two separate intersections of the street, the first with the westbound traffic lanes and the second with the eastbound traffic lanes of the highway, inasmuch as these lanes, separated by a 40-foot neutral ground, are equipped with separate traffic signals and the neutral ground affords ample space for the stoppage of traffic before it proceeds into the eastbound traffic lanes of the highway.
As pointed out by the trial judge, as the bus approached the center of the intersection, that is, the center of the crossover, the driver saw Dunigan’s car approaching the intersection from the right only a short distance away. At its speed, the bus could have been stopped within 18 or 20 feet, or well within the 40-foot neutral zone. No effort to stop was made. The driver elected to continue through the intersection solely on a basis he had entered the intersection on a green light and on the presumption that Dunigan had a red light. It was negligence, under the circumstances, for the bus driver to attempt a crossing of the eastbound traffic lanes of the highway under heavy traffic and at a time when he did not know what signals were in effect governing traffic in those lanes.
Public carriers of passengers are required to exercise the highest degree of care. Commission by the carrier of any act of negligence contributing to accidental injury to a passenger, or the omission by the carrier of any act of prudence, care, or *474 caution which might result in avoiding such an injury, subjects the carrier to liability.
King v. King,
253 La. 270, 217 So.2d 395 (1968);
Wise v. Prescott,
244 La. 157, 151 So.2d 356 (1963);
Henderson v. Baton Rouge Bus Company,
217 So.2d 422 (La.App., 1st Cir. 1968);
Barnes v. Toye Brothers Yellow Cab Co., 204 So.2d 83 (La.App., 4th Cir. 1967);
Landry v. Ed’s Cab Service, Inc.,
185 So.2d 27 (La.App., 4th Cir. 1966);
Johnson v. Shreveport Transit Company, 137 So.2d 463 (La.App., 2d Cir. 1962);
Adams v. Canal Insurance Co.,
127 So.2d 40 (La.App., 1st Cir. 1961-cert. denied).
Moreover, when a passenger in a public conveyance is injured as the result of an accident, the burden of proof is on the carrier to show it was free of negligence.
Henderson v. Baton Rouge Bus Company, supra;
Barnes v. Toye Brothers Yellow Cab Co., supra;
Landry v. Ed’s Cab Service, Inc., supra;
Johnson v. Shreveport Transit Company, supra;
Adams v. Canal Insurance Co., supra.
From a review and evaluation of the facts under the aforesaid principles of law, we conclude, as did the trial judge, that the driver of the bus was guilty of actionable negligence in connection with plaintiff’s injuries.
Mamie Lewis, plaintiff, a passenger in defendant’s bus, was a 68-year-old female. She was employed in domestic work five days a week at the time of the accident. She earned approximately $3.00 a day. As a result of the accident she became unconscious, sustained a one-half-inch laceration on her head and a fracture of the right clavicle. She was hospitalized for four days and was off from work approximately six months. Complaints after six months consisted of some stiffness in her shoulders. No other residual effect of the accident was shown except possible intermittent headaches and, to a minor degree, discomfort in the right shoulder.
We find no manifest error in the wide discretion of the trial court with respect to the award óf damages.
Accordingly, the judgment appealed is affirmed at defendant-appellant’s costs.
Affirmed.