282 So.2d 566 (1973)
Edgar Allan AIME, Jr.
v.
Charles W. HEBERT, New Orleans Public Service, Inc. and any undisclosed insurance companies.
No. 5590.
Court of Appeal of Louisiana, Fourth Circuit.
August 7, 1973.
Rehearing Denied September 26, 1973.
*567 J. Terrell Heath and Sanford Krasnoff, New Orleans, for plaintiff-appellant.
A. R. Christovich, Jr. and C. B. Ogden, II, New Orleans, for defendants-appellees.
Before SAMUEL, BAILES and FLEMING, JJ.
SAMUEL, Judge.
Plaintiff filed this suit for injuries received while he was a fare-paying passenger on a New Orleans Public Service bus. Named in the petition as defendants are Charles W. Hebert, the bus driver, and his employer, New Orleans Public Service, Inc., a public carrier. Following trial on the merits there was judgment in favor of the defendants, dismissing plaintiff's suit. Plaintiff has appealed.
From the record before us, which includes the testimony of the plaintiff, four other passengers and the bus driver, we find the following facts:
A group of black teen-agers[1] boarded the bus at London Avenue and Broad Street in New Orleans. They were loud and boisterous, chatting and skylarking among themselves. The bus was not crowded and they went to the extreme rear, some seating themselves on either side of a white youth on a back seat and some in the seat directly in front of the others. While in the bus they continued their loud and boisterous conduct, cursing among themselves, and beating on the *568 seats; some were smoking. The group remained on the bus for approximately twenty minutes during which time the vehicle traveled a distance of from three to five miles.
All of the other passengers of the bus were aware of the disturbance consisting of the loud and sometimes obscene voices of the black youths. The bus driver occasionally observed the group in his rear view mirror. He too knew the youths were noisy and boisterous but he saw they were keeping to themselves in the rear. He did not see any weapons nor did he see the youths disturbing any other passengers. None of the passengers made any complaint to the driver. Two girls did move from the long seat next to the front bus door to sit directly behind the driver after one of the black youths had spoken to one of these girls indicating he knew where she lived. The girls intended to get off at the Lonely Oaks Drive stop but elected to remain until the following stop as they were afraid of being followed by the youths after getting off.
The only person who knew the black youths were armed was the white boy seated in their midst on the back seat. He did not inform the bus driver or any of the passengers of that fact. He saw one of them with what he described as a "meat cleaver" and he also saw another black youth cut a seat with a "butcher knife". It was this witness's opinion that to have moved from his seat or to have complained to the driver should have precipitated a racial incident. He felt the best way to handle the situation was to do nothing.
For about two minutes before the bus reached the stop at Lonely Oaks Drive and Chef Menteur Highway the group continually activated the buzzer, signifying their intention to get off at that stop. When the bus stopped at Lonely Oaks Drive the group proceeded to disembark.
Plaintiff, a 33 year old man, was seated directly in front of the back door through which the group left the bus. He testified he had noticed the white boy in the black group and was afraid of an incident but did not want to get involved. He did not leave his seat nor did he make any attempt to notify the bus driver. As the group was leaving one of the black youths in the front of the group punched plaintiff in the back of the head. Remaining seated, plaintiff turned in the direction of the departing black youths and made some remark about "cutting it out" and using a curse word or words. The last of the group then stabbed the plaintiff in the back four times. All of the group immediately ran away.
It is plaintiff's position that his injuries were due to negligence of the bus driver in failing to taken any action when he knew, or should have known, that the black youths were dangerous to the other passengers on the bus.
While not in the position of an insurer, a public carrier of passengers for hire is required to exercise the highest degree of vigilance, care and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence.[2] The mere showing of injury to a fare-paying passenger, and his failure to reach his destination safely, establishes a prima facie case of negligence.[3] Such a carrier can be liable for an assault by one passenger on another passenger where there is reason for the carrier employee to anticipate the assault and a failure on his part to take such action as may be practicable under the circumstances to prevent *569 the assault from being committed or to interfere with its execution.[4]
We agree with the trial court's conclusion that there was no negligence on the part of the bus driver. The driver was not aware that the black youths were armed nor could he reasonably have anticipated that they or anyone of them would assault one of the other passengers. The stabbing incident did not occur until the group was leaving the bus and that incident came as a complete surprise not only to the driver but also to all of the other passengers.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Testimony relative to the number of persons in the group varied from as low as four to as high as "from ten to fifteen".
[2] Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378; Mire v. LaFourche Parish School Board, La., 62 So.2d 541.
[3] Wise v. Prescott, 244 La. 157, 151 So.2d 356; Gross v. Teche Lines, Inc., supra; Fontenot v. Fidelity General Insurance Company, La.App., 185 So.2d 896.
[4] Patin v. New Orleans Union Passenger Terminal, La.App., 210 So.2d 408; Alphonse v. New Orleans Public Service, Inc., La.App., 138 So.2d 610; Bynum v. Wiggins, La.App., 107 So.2d 476.