338 So.2d 771 (1976)
Carrie Skipper, wife of/and Hal SKIPPER, Jr.
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 7624.
Court of Appeal of Louisiana, Fourth Circuit.
October 13, 1976.
Rehearing Denied November 16, 1976.
*772 Anthony J. Vesich, Jr., New Orleans, for plaintiffs-appellees.
Floyd F. Greene, New Orleans, for defendant-appellant.
Before LEMMON, GULOTTA and BEER, JJ.
GULOTTA, Judge.
This suit grows out of an incident on defendant's Jackson Avenue bus, which was stopped in the course of picking up and discharging passengers at Canal and Baronne Streets on February 20, 1974, at approximately 9:00 or 9:15 p.m. Defendant appeals from a judgment in favor of plaintiff who sustained injury to her right ankle and knee when she was pushed to the floor by an unruly crowd of boarding teenagers who rushed on the bus after she deposited her fare and while she awaited a transfer. Plaintiff's husband joins her in this action and seeks reimbursement for her medical expenses. Quantum is not at issue.
Plaintiff and two companions boarded the bus along with a number of other people, including a large group of teenagers, shortly after a carnival parade had passed on Canal Street. According to plaintiff's version, she was preceded by a number of adolescents who avoided paying their fares by rushing onto the bus. While plaintiff was waiting for a transfer, the bus driver left his seat and, without closing the front door of the bus, went to the rear of the vehicle to evict passengers who had unlawfully entered through the rear door. While the driver was at the rear of the bus, several more teenagers charged through the open front door and knocked plaintiff to the floor.
The bus driver concedes that non-fare-paying passengers were rushing into the bus through both doors; and admits that he did not close the front door when he went to the rear. He denies, however, any knowledge that plaintiff was knocked down or injured or that he was told of any such incident.
In awarding a judgment in favor of plaintiff, the trial judge found that the bus driver should have closed the front door before confronting the non-paying passengers at the rear of the bus. He further concluded that the driver's failure to close the door placed plaintiff in "an unnecessary position of peril". We agree. Accordingly, we affirm.
Defendant complains, on appeal: 1) that the trial judge erred in finding the driver negligent for not closing the door before proceeding to the rear of the bus; 2) that it did not violate the high degree of care owed by a common carrier; and, 3) that it is not liable for the acts of third persons or other passengers because the driver had no knowledge nor could have reasonably anticipated that the conduct of fellow passengers endangered the safety of plaintiff in this case. We disagree.
It is well settled that a common carrier is not an insurer of the safety of its passengers. However, it is also well settled that a common carrier "is liable for the slightest negligence which contributes to an accident that causes injury to a passenger . . ." Gross v. Teche Lines, 207 La. 354, 21 So.2d 378, 382 (1945). The duty placed on the carrier is to exercise "the highest degree of vigilance, care and precaution". Aime v. Hebert, 282 So.2d 566, 568 (La.App. 4th Cir. 1973). In cases where a passenger is injured by another passenger, the high duty of care placed on a common carrier is violated where there exists reason on the part of the driver to anticipate or foresee that injury may occur to a passenger.
In Aime v. Hebert, supra, we set forth the test for holding a carrier liable in these cases. In Aime, we said:

*773 "* * * Such a carrier can be liable for an assault by one passenger on another passenger where there is reason for the carrier employee to anticipate the assault and a failure on his part to take such action as may be practicable under the circumstances to prevent the assault from being committed or to interfere with its execution."
In his written reasons for judgment, the trial judge stated, "The parade crowd was obviously unruly." The record supports this conclusion. Ruth Gwin, plaintiff's companion and a passenger on the bus at the time of the incident, noted that people were getting on the bus "in droves". She remarked that there was "a lot of carrying on" and that the crowd of teenagers "was cursing the driver and cursing everybody else". Allen Goldsmith, the bus driver, stated that "everybody was trying to get on the bus at the same time, pushing each other". He admitted that people were surging in through both doors without paying, and he observed that "it was hard to stop them". He further admitted that, before he went to the back of the bus, some non-paying teenagers had already rushed past him.
It was entirely foreseeable that leaving the front door open would expose a passenger, waiting the driver's return, to the risk of being pushed by unruly passengers entering the bus through the front door. The driver simply should have closed the front door before seeking to evict passengers entering the rear of the bus. We conclude, under the circumstances, that plaintiff's injury comes within the ambit of foreseeable risk and that defendant failed to observe the high degree of care placed upon a common carrier.
We distinguish this case from our recent decision, Carter v. New Orleans Public Service, Inc., 335 So.2d 105 (La.App. 4th Cir. 1976). In Carter, the record supported the trial judge's finding that the crowd of youths on the bus appeared playful rather than threatening or abusive upon entering the bus. Though the youths in that case committed an assault on the passenger shortly before they left the bus, we concluded that the bus driver did not breach the duty placed upon a common carrier. Having taken the youths aboard, he was not negligent in beginning to drive the bus. He could not have foreseen that the apparently playful teenagers would later commit an assault on a fare-paying passenger. Furthermore, we found that the driver acted prudently in that case once he became aware of the attack.
In the instant case, however, the facts are different: the teenagers rushing on board the bus were boisterous and threatening. Accordingly, we conclude the high degree of care placed upon a common carrier was violated when the driver failed to close the front door before he moved to the rear of the bus. Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
LEMMON, J., subscribes to the judgment and assigns additional concurring reasons.
BEER, J., concurs.
LEMMON, Judge (subscribing to the judgment and assigning additional concurring reasons).
The test of negligence is reasonableness. For a duty-risk analysis, the test must be applied both to the duty imposed by the circumstances and the conduct in response to that duty.
The circumstance of the pushing and surging of the unruly crowd at the door of the bus, behind plaintiff who was standing there waiting for a transfer, involved the risk that the crowd would rush in and injure plaintiff if the door were left open and unattended. Existence of this risk imposed a corresponding duty on the part of the bus driver to take reasonable action to avoid the risk (as by closing the door when leaving it unattended). The failure to take reasonable action breached that duty and resulted in damages to plaintiff, and since there was an "ease of association" between the risk and the duty, liability should be imposed. Hill v. Lundin & Associates, 260 La. 542, 256 So.2d 620 (1972).
*774 BEER, Judge (concurring).
I concur, being of the view that Goldsmith's acknowledged failure, under the circumstances, to close the front door prior to going to the rear of the bus distinguishes Carter v. New Orleans Public Service, Inc. and supports the conclusion reached by my brothers.
Had the incident occurred under identical circumstances but with Goldsmith in the driver's seat (and thus, ostensibly, in control), Carter should, in my view, apply.
I point this out in order to make it clear that neither New Orleans Public Service, Inc. or any other carrier similarly situated, should, in my belief, be placed in the anomalous position of providing full access public transportation on one hand and being required, on the other hand, to unalterably guarantee protection, from all of the vagaries of that public. We would be unrealistic if we failed to acknowledge the existence of present-day conditions which can and sometime do prevent a bus driver from effectively coping with a totally irresponsible group while still trying, as best he can, to make his bus available to the public. Present-day public carriers have neither the fiscal ability to attractnor may they undertake the painstaking screening processes to limit employment tobus drivers who are experts in crowd psychology, passenger protection and split-second decision making involving complex matters with far-reaching implications.
The sways and tensions of our times particularly as they translate to crowd control in the public sectorare awesomely complex in their moral and legal implications, just as the fiscal problems of continuing to provide public transportation are awesome in their stark simplicity. We must be wary of imposing requirements no longer realistic in the premises lest we require more of our system of public transportation than it can possibly deliver.