335 So.2d 105 (1976)
Mary Lynn CARTER and Kenneth Johnston
v.
NEW ORLEANS PUBLIC SERVICE, INC.
No. 7533.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1976.
Rehearing Denied July 29, 1976.
Writ Refused October 29, 1976.
Richard C. Buckman, New Orleans, for plaintiffs-appellants.
A. R. Christovich, Jr., New Orleans, for defendant-appellee.
Before GULOTTA, STOULIG and MORIAL, JJ.
GULOTTA, Judge.
Plaintiffs, passengers on a NOPSI bus, injured as a result of an attack by a group of teenage bus passengers, appeal from the dismissal of their suit against the transit company. We affirm.
The undisputed facts are that plaintiffs boarded a bus on Franklin Avenue, at the intersection of Leon C. Simon Boulevard, and sat together on the bench seat immediately in front of the left rear exit door. Shortly thereafter, at the same bus stop, a large group of teenage youths boarded the bus.
According to plaintiffs, within two blocks after the bus started to move, Kenneth Johnston's hair was pulled by one or more of the youths. The bus was traveling in the direction of Canal Street and the river.
Immediately after the hair-pulling incident, plaintiffs attempted to leave the bus.
*106 Mary Lynn Carter testified that she pulled the cord for the purpose of stopping the bus, but to no avail. According to plaintiffs, attempts were made by the youths to take Miss Carter's purse, and both plaintiffs were physically attacked by the uncontrollable youths. Plaintiffs testified that during this entire occurrence, the bus continued to move on Franklin Avenue in the direction of the river. Miss Carter further testified that she again pulled the cord to signal the bus driver to stop. However, she again did not hear the buzzer. She then screamed and "within a few seconds" the bus stopped.
According to plaintiffs, the bus traveled four or five blocks between the hair-pulling incident and the intersection at which it stopped on Vienna Street and Franklin Avenue. The bus driver, unable to reach plaintiffs through the aisles of the bus because of the crowded condition, exited the bus through the front door and entered through the rear exist door. According to the driver, he instructed the youths to discontinue their attack and then called the dispatcher to ask for police assistance. In the interim, the unruly youths existed the bus and dispersed.
It is plaintiffs' position that the bus driver violated the high standard of care owed to passengers to prevent foreseeable and preventable acts of violence and abuse from other passengers. Specifically, plaintiffs complain: 1) that the bus driver was derelict in permitting the bus to become dangerously overcrowded by unruly and rowdy juveniles; 2) that the overcrowded condition prevented visual observation of the attack on plaintiffs; 3) that the noise level prevented the bus driver from hearing the buzzer, pulled by plaintiff, or alternatively, that the buzzer was not working; 4) that the bus driver failed to discover plaintiffs' peril for five or six blocks, when, with the exercise of reasonable care, he should have foreseen plaintiffs' plight at an earlier point in time; 5) that the bus driver violated his duty in permitting the rear exit of the bus to be blocked by the unruly and rowdy juveniles; and, 6) that after having ascertained the threatening attitude of the youthful passengers, the driver failed to follow the transit company's instructions in not immediately calling the dispatcher from the nearest available telephone. Plaintiffs further contend that the transit company failed to provide the driver with adequate instructions and devices which could assist him with crowd control and could prevent injury to a passenger by a fellow passenger.
In written reasons for judgment, the trial judge stated:
"The Court finds that considering all of the testimony, there is no violation on the part of the New Orleans Public Service, of the duty owed to their fare paying passengers."
We agree.
In the event of a disturbance on the bus, the bus driver stated he had been instructed to stop the bus and call the dispatcher. The driver further indicated that he has been instructed to prevent foreseeable disorder or trouble.
It is clear that after becoming aware of the disturbance and attack on plaintiffs, the driver, as instructed, stopped the bus at the nearest intersection, tried to assist plaintiffs and called the dispatcher. Uncontradicted is the fact that as a result of the driver's action, the youths quickly ran off the bus and dispersed. Under the circumstances, we conclude the bus driver did not violate any duty placed upon him after he became aware of the disturbance and attack on plaintiffs.
The most serious thrust of plaintiffs' complaint is that the conduct of the crowd of youthful passengers, boarding the bus, was so unruly and ungovernable that the driver was aware or should have been aware that a disturbance would occur. In this connection, the bus driver characterized the conduct of the teenagers as "a little *107 loud" . . . "making noise, beating on the seats, having a good time. That's normal." Plaintiffs, on the other hand, characterized the boarding group of youths as exhibiting "very bad behavior". Plaintiffs stated, "They were banging on the windows, switching seats" and making "loud noises". "The bus was rocking back and forth." This was before the bus left the bus stop.
With the exception of whether or not the teenagers entered the bus through the rear door, which the trial judge deemed to be irrelevant, the judge found plaintiffs to be credible witnesses and found no conflict between the testimony of plaintiffs and the bus driver. However, inherent in the dismissal of plaintiffs' suit was a factual determination that the large group of youths boarding the bus exhibited a playful and jovial attitude, rather than a threatening, abusive or rowdy attitude. If the conduct of the young persons entering the bus was threatening, abusive or rowdy, resulting in the creation of a disturbance, the bus driver breached his duty in failing to seek help immediately from a dispatcher, in violation of the transit company's instructions, and in commencing to drive the bus along the bus route. If, on the other hand, the attitude of the boarding youths was playful and not threatening, abusive or dangerous, the bus driver did not violate any duty when he commenced driving the bus.
The trial judge chose to accept the bus driver's depiction of the boarding youths' attitude. We find no error.
The fact that the trial judge, in written reasons, also found plaintiffs to be credible witnesses does not conflict with his conclusion that the bus driver more accurately depicted the attitude of the boarding youths and, consequently, did not violate any duty owed by the driver to his passengers. Although the trial judge found plaintiffs' testimony credible, he was not obliged to accept their characterization of the youths' conduct. Under the circumstances, we conclude the driver was not placed on notice that injury might foreseeably result to the passengers.
Further, we find no merit to plaintiffs' contentions that the driver permitted the rear exit of the bus to be blocked by the youths or that the overcrowded condition of the bus prevented visual observation of plaintiffs' plight. Neither the driver nor plaintiffs testified that the rear exit door was blocked. In connection with overcrowding, the driver stated that because people were standing in the center aisle, he could not see "right" in front of the back door. However, he also testified that he could see over the heads of the people standing in the aisles. Under the circumstances, we cannot say that the bus was any more crowded than other buses which must operate with persons standing in the aisle.
We find no merit, further, in plaintiffs' contention that the driver and NOPSI were derelict when the driver failed to stop the bus in response to the buzzer (either because the noise level prevented the bus driver from hearing the buzzer or because the buzzer was not working). Plaintiffs offered no testimony to show that the buzzer malfunctioned. Furthermore, the driver stated that the noise level was "reasonable". He testified also that he did not hear the buzzer, but immediately upon hearing the scream, he stopped the bus.
No clear and convincing evidence was offered by plaintiffs that training of bus drivers by NOPSI with respect to handling emergency situations, was or is inadequate, or that any devices for handling emergency situations would have prevented the occurrence.
It is well settled that although a public carrier is not the insurer of its passengers' safety, it must exercise a high degree of care in transporting passengers to their destinations. Jones v. New Orleans Public Service, Inc., 254 So.2d 652 (La. App. 4th Cir. 1971), writ refused, 260 La. *108 402, 256 So.2d 289 (1972). However, it is equally well settled that it is the carrier's duty to prevent a passenger from injuring another passenger only if the danger is apparent and could be prevented by the exercise of proper care. Brown v. Dunbar, 29 So.2d 357 (La.App. 1st Cir. 1947); Aime v. Hebert, 282 So.2d 566 (La.App. 4th Cir. 1973).
Having concluded that there existed no danger apparent to the bus driver, we also conclude that the driver did not fail to exercise the high degree of care placed upon him. The judgment is affirmed.
AFFIRMED.
STOULIG, J., dissents with written reasons.
STOULIG, Judge (dissenting).
I respectfully dissent.
In his written reasons for judgment the court stated: "The court finds both of the plaintiffs to be credible witnesses."
The significance of the trial court's finding of plaintiffs' credibility is that their testimony is worthy of belief. Stated in another manner, their account or narrative of the circumstances and actions leading to the assault upon them must be accepted as reliable because of the trial court's impression of their veracity. It therefore follows, under the credibility call of the trial judge, the testimony of plaintiff Mary Lynn Carter that the teen-agers were acting in a rowdy and boisterous manner; that she made two futile attempts by pulling the emergency cord to attract the attention of the bus driver to the fact that she and her escort, the other plaintiff, were being molested and physically abused by the teen-aged passengers; and only by her screams was she able to obtain the bus driver's attention and his assistance must be accepted as true. The remaining plaintiff Kenneth Johnson corroborated Carter's testimony and further stated that his body had been punctured with the sharp end of an Afro hair comb.
While the testimony of the plaintiffs may be insufficient to establish negligence on the part of the bus driver, it clearly confirms a breach of the duty of care that the defendant owed to its bus passengers as a public carrier.
For these reasons I am of the opinion that the plaintiffs are entitled to recover.