349 So.2d 417 (1977)
Sloan M. ORR and McAndrew Thomas
v.
NEW ORLEANS PUBLIC SERVICE INCORPORATED.
No. 8296.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1977.
Rehearing Denied September 8, 1977.
*418 Gertler & Gertler, M. H. Gertler, New Orleans, for plaintiffs-appellees.
James Maher, III, New Orleans, for defendant-appellant.
Before SAMUEL, BOUTALL and SCHOTT, JJ.
SAMUEL, Judge.
Plaintiffs filed this suit for injuries received when they were fare-paying passengers on a defendant public service bus. At the request of his attorney the suit of plaintiff Thomas was dismissed.[1] Following trial on the merits, there was judgment in favor of plaintiff Orr in the sum of $1,800. Defendant has appealed.
The only evidence relative to the facts of the incident in suit is the testimony of plaintiff Orr and the bus driver. Orr testified: He and Thomas, both seamen temporarily in port, were seated about two-thirds of the way back of the bus. Four apparently drunk black youths boarded the bus speaking loudly and using profanity, one of whom was calling attention to the fact that he had his trousers "unzipped". The youths took seats directly behind Orr and Thomas and within the time the bus traveled one block or less they tried to pick the seamen's pockets. One of the youths moved to the seat in front of Orr and demanded money. Because the seamen did not resist, the youths became more belligerent. The two seamen then moved to the front of the bus, immediately followed by the four black youths and three or four other blacks, all of whom started to punch and kick the seamen. Orr asked the driver for assistance. The driver then stopped the bus about a block after the fighting began (which was two blocks from the time the group moved to the front), got up and asked the blacks to stop. Matters became so violent at this time that Thomas threw his money (about $70) out of the door, the black youths rushed out, grabbed the money and ran off.
According to Orr, the driver did not physically intervene nor did he see him struck by a belt as the driver testified had happened. He further stated the driver made a second stop about two blocks after the first, because he was unable to find a phone at the first stop. We note that Orr did not testify the driver actually saw the trouble prior to the time the two seamen moved to the front of the bus. However, he did testify he thought the driver could have seen what was occurring to the rear of the bus in his rear view mirror.
*419 The bus driver testified: Although the black youths were loud and profane when they got on the bus, they did not appear to be hostile and gave no indication of violence. Sometime thereafter he heard name calling in the back of the bus, and he yelled at them. About half a block later the two white sailors came to the front of the bus, followed by the blacks. He could not stop the bus immediately because of the traffic, but he brought it to a stop about one-half to one block away, and about two minutes after he was aware of the problem. He then got out of his seat and tried to get between the whites and the blacks, telling them to quiet down or they would be in trouble. He was struck by a belt swung by one of the blacks. He then pushed past the group, got out of the bus and called his dispatcher from a phone on the corner, and the dispatcher in turn called the police. He stated the whole incident took place in only two minutes and that he brought the bus to a stop as soon as he was able to do so because of the traffic, that he attempted to intervene on the part of the sailors, and that he immediately called for help after the bus stopped.
The applicable law is that while it is not in the position of an insurer, a public carrier of passengers for hire is required to exercise the highest degree of vigilance, care and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence.[2] The mere showing of injury of a fare-paying passenger and his failure to reach his destination safely establishes a prima facie case of negligence.[3] Such a carrier can be liable for an assault by one passenger on another where there is reason for the employee to anticipate the assault and a failure on his part to take such action as may be practicable under the circumstances to prevent the assault from being committed.[4]
We are aware of the rule that "the judgment of the trial court on a question of fact will not be reversed by an appellate court unless it is manifestly erroneous; this rule, however, does not deprive an appellate court of its jurisdiction upon both the law and the facts."[5] (emphasis ours).
We are also aware of the holding in Canter v. Koehring Company,[6] that where there is evidence before the trial court which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for that court's finding, the appellate court should not disturb this factual finding in the the absence of manifest error.
Here we cannot say the trial court's acceptance of Orr's testimony and apparent rejection of the bus driver's testimony was erroneous. However, we do hold that even accepting Orr's testimony, we must reverse.
From Orr's testimony it is clear the four black youths entered the bus only approximately six to eight blocks prior to the time the two seamen moved to the front of the bus, were on the bus for only a total of about 8 minutes and the actual violence itself lasted only a very brief part of that time. Nor does Orr's testimony establish that the conduct of the four blacks on entering the bus was sufficient to justify or require that the driver keep them off the bus, especially in view of defendant's obligation to afford transportation to the public. *420 That testimony includes a statement that Orr did not see the driver struck by a belt or otherwise; but it appears quite possible that Orr saw very little of the driver while he was actively engaged in defending himself and, in any event, we have specifically held this public carrier does not have the obligation of having its bus driver physically intervene in an altercation.[7]
Thus, even accepting all of the facts and circumstances established by Orr's testimony, we find no liability on the part of the defendant.
We distinguish this case from our recent decision in Campo v. George.[8] In Campo the driver was aware of the possibility of trouble from the time, or within one block after a gang of 17 or 20 youths entered the bus and began to terrorize the white passengers, yet he continued on his route for eight or nine miles, and failed to seek help, even at a time when his bus stopped on a corner where a police station was only 20 feet away.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of the defendant, New Orleans Public Service, Inc., and against the plaintiff, Sloan M. Orr, dismissing the latter's demands at his cost in both courts.
REVERSED.
SCHOTT, J., concurs in the result.
NOTES
[1] The court was advised Thomas might be dead and that his heirs had not been substituted as parties plaintiff.
[2] Gross v. Teche Lines, 207 La. 354, 21 So.2d 378; Campo v. George, La.App., 347 So.2d 324, handed down June 7, 1977; Vaughn v. New Orleans Public Service, Inc., La.App., 314 So.2d 545.
[3] Wise v. Prescott, 244 La. 157, 151 So.2d 356; Gross v. Teche Lines, supra, note 2; Higgins v. New Orleans Public Service, Inc., La.App., 347 So.2d 944, handed down June 30, 1977; Aime v. Hebert, La.App., 282 So.2d 566; Fontenot v. Fidelity General Insurance Company, La.App., 185 So.2d 896.
[4] Skipper v. New Orleans Public Serv., Inc., La.App., 338 So.2d 771; Carter v. New Orleans Public Service, Inc., La.App., 335 So.2d 105; Patin v. New Orleans Union Passenger Terminal, La.App., 210 So.2d 408; Alphonse v. New Orleans Public Service, Inc., La.App., 138 So.2d 610; Bynum v. Wiggins, La.App., 107 So.2d 476.
[5] State v. City of New Orleans, 240 La. 820, 125 So.2d 375.
[6] La., 283 So.2d 716.
[7] Higgins v. New Orleans Public Service, Inc., supra, note 3.
[8] Supra, note 2.