421 So.2d 1199 (1982)
Mildred BURNELL, Plaintiff-Appellant,
v.
SPORTRAN TRANSIT SYSTEM COMPANY, et al., Defendants-Appellees.
No. 15042-CA.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
Writ Denied December 20, 1982.
*1200 Rice & McWilliams by John Ford McWilliams, Jr., Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Samuel W. Caverlee, Shreveport, for defendants-appellees.
Before HALL, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
Plaintiff appeals a jury verdict rejecting her claim for damages sustained as a result of personal injuries allegedly sustained while she was a passenger on a "Sportran" bus in Shreveport. On September 24, 1979, plaintiff boarded bus 606 owned by Transit Management, Inc. [hereinafter referred to as Sportran], insured by Transit Casualty Company, and operated by Christine Daniels, its driver.[1] The bus is a GMC diesel bus with a 671 motor. Apparently, there was a defect in this particular bus' air conditioning system which caused an odor to permeate the bus described by witnesses as "fumes" or "something burning." There was never any fire or smoke, and otherwise, the bus was operating properly. However, after driving for several blocks, the driver became concerned about the odor and stopped the bus at a local convenience store to telephone Sportran's maintenance supervisor for instructions as to what to do in connection with this problem. After the driver informed the supervisor that she thought she could drive the bus further, he instructed her to drive two or three miles to meet a replacement bus. Before re-boarding the bus, the driver inspected the rear of the bus and found nothing out of the ordinary. She then proceeded to drive the bus about fifty feet when she noticed sparks flying from the tailpipe of the bus. She immediately stopped the bus and told the passengers to "... unload because the bus is sparkling from behind."
Twenty-five to thirty passengers were aboard the forty-five capacity bus at the time and all but four or five stood up to *1201 leave simultaneously. Approximately half of the passengers exited through the door by the driver's seat and half through the door to the rear of the bus. The bus was stopped on a two lane paved road with its wheels at least a few feet from the edge of the road. The shoulder of the road was dirt and there were six to seven feet of distance between the road and a two foot, gradually sloping ditch which was damp with dew.
According to the testimony, the passengers did not exhibit any panic or unduly loud noise but there is also testimony that there was some anxiety shown as well as pushing and rushing as they exited the bus. There is further testimony that the driver did not provide the passengers with any instructions on the manner in which they were to leave the bus and did not monitor or supervise their leaving. However, the testimony is consistent that she remained calm and did not panic.
Plaintiff's uncontradicted testimony was that as she was exiting through the rear door of the bus, another passenger pushed her from behind causing her to slip or fall into the nearby ditch. However, none of the witnesses who testified saw the actual pushing of plaintiff nor did they see plaintiff fall. Only one person who testified actually saw her lying in the ditch. Thereafter, several passengers assisted her to her feet and to a chair provided by a nearby resident where she remained until she was assisted aboard the replacement bus and transported to a location where she was taken home by a friend. The medical testimony presented at trial indicates that she suffered a serious injury to her kneecap as a result of this incident rendering her 15 percent permanently disabled.
After hearing all of the evidence, the jury returned a verdict in favor of defendants and against plaintiff. It is from this verdict that plaintiff appeals assigning as her only error that the jury verdict was inconsistent with the law and the facts.
Although a carrier of passengers is not an insurer of safety, it is required to exercise the highest degree of care and is liable for the slightest negligence. Furthermore, when a passenger is injured in an accident and has failed to reach his destination safely, the burden is on the carrier to prove itself free from fault, that it acted with the highest degree of care or that the accident did not occur. See Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981). The rule properly stated is that the mere showing of injury to a fare-paying passenger on a public conveyance and the failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincingly overcoming the prima facie case. At this point the burden shifts to defendant to show that the incident did not occur, that defendant had exercised reasonable care in discharging the plaintiff or that any negligence on its part was not the legal cause of the plaintiff's mishap. Galland v. New Orleans Public Service, Inc., 377 So.2d 84 (La.1979). Because carriers are charged with the highest degree of care to their passengers, the slightest negligence causing injury to a passenger will result in liability. Wise v. Prescott, 244 La. 157, 151 So.2d 356 (La.1963). A carrier must use the highest degree of care in selecting safe vehicles and equipment for the safety of its passengers which must be vigilantly and regularly inspected. Kendall v. New Orleans Public Service, Inc., 45 So.2d 541 (La. App.Orl.1950).
Our review of the record indicates that there is ample evidence to support a finding that the plaintiff was a fare paying passenger on a public conveyance who failed to reach her destination safely. Therefore, the burden shifted to Sportran to exculpate itself of negligence.
There is no question but that the bus in question suffered from a mechanical problem which resulted in plaintiff's being forced to evacuate the bus during which she was injured. Charles Garner, the maintenance supervisor for Sportran, was accepted by the court as an expert on diesel bus maintenance. He testified that the sparks that resulted in the termination of this bus service on that date came from the air conditioner's clutch system when its plate *1202 locked causing sparks and fumes. He further testified that Sportran uses a preventive maintenance system and that even with diligent use of the system, a mechanic cannot foresee whether or not the particular parts that malfunctioned would fail. Plaintiff introduced no evidence to refute this, and we conclude that Sportran was not negligent in failing to provide a safe vehicle which was vigilantly and regularly inspected.
However, a more serious question presented for our review is whether or not Sportran discharged its burden of proof in exculpating itself from any negligence in the manner in which the passengers were evacuated from the bus after it malfunctioned. The burden of proof on Sportran in this regard was to show that there was no disregard of its duty or its employee's duty to the plaintiff and that her injury resulted from a cause which human care and foresight could not prevent. See Johnson v. New Orleans Public Service, 293 So.2d 203 (La.App. 4th Cir.1974). To exculpate itself from negligence Sportran need not establish the manner in which the plaintiff was injured but need only prove that its actions at the time of the injury were not negligent ones. See Duplessis v. New Orleans Public Service, 354 So.2d 768 (La.App. 4th Cir. 1978). Any negligence, however slight, will subject Sportran to liability even assuming that the concurring negligence of a third party contributed primarily to the accident. Brown v. Gonzales, 77 So.2d 887 (La.App. Orl.1955).
It is well settled that a common carrier is not an insurer of the safety of its passengers. However, it is also well established that a common carrier is liable for the slightest negligence which contributes to an accident that causes injury to a passenger. The duty placed on such a carrier is to exercise the highest degree of vigilance, care and precaution. In cases where a passenger is injured by another passenger, the high duty of care placed on a common carrier is violated where there exists reason on the part of the driver to anticipate or foresee that injury may occur to a passenger. Skipper v. New Orleans Public Service, Inc., 338 So.2d 771 (La.App. 4th Cir.1976).
The test for holding a carrier liable in these cases was stated in Aime v. Hebert, 282 So.2d 566 (La.App. 4th Cir.1973):
* * * Such a carrier can be liable for an assault by one passenger on another passenger where there is reason for the carrier employee to anticipate the assault and a failure on his part to take such action as may be practicable under the circumstances to prevent the assault from being committed or to interfere with its execution. [282 So.2d at 568]
Furthermore, the fact that a carrier created the risk or danger and should have reasonably foreseen that the accident which did occur might occur renders it liable notwithstanding the intervening cause of the harm [here, the pushing by a fellow passenger]. See Waggenspack v. New Orleans Public Service, Inc., 297 So.2d 733 (La.App. 4th Cir.1974).
Our review of the record leads us to conclude that the fact finder here [the jury] was clearly wrong and committed manifest error in its finding that Sportran was not liable to plaintiff for her injuries. See Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Therefore, for the following reasons we reverse its finding.
Plaintiff vigorously argues before this court that the driver's bald announcement that the passengers must exit the bus because of sparks coupled with the smell of fumes on the bus created a situation of panic and the resulting panic allegedly made the plaintiff's fall foreseeable to the driver. We disagree with plaintiff's contention that there was a situation of panic created by the driver's actions. However, we conclude from our reading of the record that although there is little evidence of panic, there is evidence that the 25-30 passengers on the bus were, for the most part, in a hurry to evacuate the bus and there was pushing and jostling. By the driver's own admission, she simply announced that the passengers would have to exit the bus *1203 because "... the bus is sparkling from behind." She further testified that after making that announcement, she sat back down in her seat, gathered up her schedules and transfer forms and waited for the passengers to clear the bus. She offered no instructions to the passengers as to the proper procedure for the evacuation because "I [the driver] didn't figure that I had to give anybody any reason to panic, so I didn't feel like I had to watch them like a child." In other words, her testimony was to the effect that she did not supervise in any respect the evacuation of the bus, she gave no instructions as to the proper method of evacuation, she did not get off of the bus to determine if the passengers could safely disembark at the place where the bus was stopped, and finally, she did not explain that the problem was not serious and that there was no immediate danger to the passengers who were on the bus with the engine still running. It is further noteworthy that she admitted that she had never been given any instructions by Sportran as to the proper procedure to use to evacuate a bus in such an emergency situation.
We conclude under these facts and circumstances that it was certainly foreseeable that at least some of the passengers after smelling the fumes and being told that sparks were coming from the rear of the bus would become anxious and in a hurry to exit the bus. It is equally foreseeable that such a rush could result in passengers pushing and shoving each other to the extent that someone would be exposed to the risk of being pushed by fellow passengers attempting to hurriedly exit through the doors of the bus. Therefore, plaintiff's injury falls within the ambit of foreseeable risk, and defendant failed to observe the high degree of care placed upon a common carrier in such instances to avoid such risk. Accordingly, we conclude that the high degree of care placed upon a common carrier was violated when Sportran failed to instruct its driver as to the proper, safe procedure to follow to evacuate a bus in an emergency situation when the bus malfunctions and when its driver failed to properly instruct her passengers as to the proper method to evacuate and to supervise the evacuation. There was a duty imposed upon Sportran to adequately prepare its driver for such foreseeable emergency situations with their resulting risks and there was a corresponding duty imposed upon the driver to take reasonable action to avoid the risks [the risk being here that someone would be pushed and injured by an overanxious, unsupervised passenger]. The failure of Sportran and its driver to take reasonable action under the circumstances breached their duty to plaintiff, and because there was an "ease of association" between the risk and the duty, liability should be imposed. Hill v. Lundin & Assoc., 260 La. 542, 256 So.2d 620 (1972).
Because the burden in this case was shifted to the defendant to show that the incident had not occurred, or that Sportran had exercised reasonable care in discharging plaintiff or that any negligence on its part was not the legal cause of the plaintiff's injury, we conclude that the evidence presented by defendant was insufficient to rebut the prima facie case of negligence thereby created. Since Sportran did not prove itself free from negligence, the jury was clearly wrong in returning a verdict in favor of Sportran. See Galland v. New Orleans Public Service, Inc., supra; Arceneaux v. Domingue, supra.
Having concluded that plaintiff is entitled to recover for her injuries, we consider the issue of damages. Pursuant to La.C. C.P. Art. 2164, Courts of Appeal are empowered to award damages in cases where the trier of fact initially rejects the plaintiff's demands and the record is complete with regard to damages. McCoy v. Franklin Parish Police Jury, 414 So.2d 1369 (La. App.2d Cir.1982).
Initially we note that the parties stipulated that plaintiff had incurred in connection with her injury medical expenses in the amount of $3200.09 and loss of earnings in the amount of $960. Therefore, we award special damages to plaintiff in the amount of $4160.09 in accordance with that stipulation.
*1204 Plaintiff was assisted from the ditch after the accident and placed in a chair provided by a nearby resident. Thereafter, she was assisted aboard the replacement bus and transported to a location where she was transferred to the vehicle of a friend who took her home. She was later taken by another friend to Dr. Palmer who x-rayed her left kneecap and discovered that it was fractured and displaced. She was informed by Dr. Palmer that the injury was too severe for him to treat, and he referred her to Dr. Mead who placed her in the Highland Hospital in Shreveport. When it was discovered that Sportran did not intend to pay plaintiff's medical bills, because she had insufficient financial means to pay for the required care, she was transferred by ambulance to the LSU Medical Center where she was hospitalized. The final diagnosis of plaintiff's injury was post patella fracture incongruity of the left patella producing chondromalacia. She underwent treatment at LSU for several months as an out patient. Approximately five weeks after the accident, she was also seen by Dr. W.W. Fox who also diagnosed a mild sprain to the cervical and lumbar spine.
Because the patella did not heal satisfactorily, plaintiff was admitted to Schumpert Medical Center on November 9, 1980, by Dr. Fox, who performed an arthrotomy of the left knee and drilling and shaving of the patella. She was discharged on November 14, 1980, with a walker. She later used crutches in lieu of the walker and at the time of trial in February, 1982 was able to walk without the aid of crutches or other assistance. The evidence preponderates that a result of her injuries, plaintiff suffered a significant degree of pain for an extended period of time.
Accordingly, we find that $20,000 will adequately compensate plaintiff for her pain and suffering.
For the foregoing reasons, the judgment of the lower court is reversed in its entirety and judgment is rendered in favor of plaintiff, Mildred Burnell, and against defendants, Louisiana Transit Management, Inc., and Transit Casualty Company, in the amount of $24,160.09. This award is to bear interest from the date of judicial demand until paid with all costs of this proceeding to be borne by defendants.
JUDGMENT REVERSED AND RENDERED.
NOTES
[1] It was stipulated by the parties that Christine Chambers was an employee of defendant Transit Management, Inc., (Sportran) on September 24, 1979 and was within the scope of her employment while driving the bus in question. It was further stipulated that Transit Casualty Company had issued a policy of public liability insurance to Transit Management, Inc. prior to the time of the accident which was in full force and effect.