441 So.2d 436 (1983)
Annie T. DUPREE, Plaintiff-Appellant,
v.
LOUISIANA TRANSIT MANAGEMENT, INC. D/B/A Sportran, John Dixon and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Defendants-Appellees.
No. 15617-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
Rehearing Denied December 22, 1983.
Writ Denied February 27, 1984.
*438 Smith & Bowers by Gary A. Bowers, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Samuel W. Caverlee, Shreveport, for defendants-appellees.
Before HALL, MARVIN, JASPER E. JONES, SEXTON and NORRIS, JJ.
NORRIS, Judge.
Annie T. Dupree appeals a judgment of the trial court rejecting her claim for damages sustained as a result of personal injuries allegedly sustained while she was a passenger on a "Sportran" bus in Shreveport.
On April 14, 1982, Mrs. Dupree boarded a bus owned by Louisiana Transit Management, Inc., d/b/a Sportran, which was operated by John Dixon and insured by National Union Fire Insurance Company of Pittsburgh, Pennsylvania. According to the claim of Mrs. Dupree, while she was enroute to her daughter's house as a passenger on the Sportran bus, a passenger who had been drinking stepped on her right foot while she was in the act of seating herself. Because Mrs. Dupree suffered from a pre-existing diabetic peripheral vascular disease, she contends that the injury inflicted by the passenger resulted in gangrene necessitating hospitalization, surgery and an extended period of recovery.
The issues presented by this appeal are whether Sportran exculpated itself of even slight negligence causally connected to Mrs. Dupree's injury; if so, whether any trauma caused thereby accelerated and/or aggravated her pre-existing condition; and if so, what is the amount of her damages.
Although a carrier of passengers is not an insurer of its passenger's safety, it is required to exercise the highest degree of care and is liable for the slightest negligence. Burnell v. Sportran Transit System Co., 421 So.2d 1199 (La.App. 2d Cir.1982). Where there is proof of injury to a fare-paying passenger, the burden shifts to the defendant carrier to show that it is free from negligence because the mere showing of injury to a fare-paying passenger on a public conveyance and his failure to reach his destination safely establishes a prima facie case of negligence and imposes the burden on the carrier of convincing by overcoming the prima facie case. Galland v. New Orleans Public Service, Inc., 377 So.2d 84 (La.1979). When a prima facie case of negligence against defendant is established, it imposes the burden on the defendant carrier to exculpate itself by proving that it exercised the highest degree of diligence, care and precaution for the safety of its passengers. Ellizey v. New Orleans Public Service, Inc., 365 So.2d 10 (La.App. 4th Cir. 1978). The carrier must do all that human sagacity and foresight can do under the circumstances in view of the character and mode of conveyance to prevent injury to passengers. McDermott v. New Orleans Public Service Inc., 420 So.2d 993 (La.App. *439 4th Cir.1982). There is a heavy presumption of negligence accompanying a carrier's duty of care toward its passengers. Pilipovich v. New Orleans Public Service, Inc., 422 So.2d 262 (La.App. 4th Cir.1982). Any negligence, however slight, subjects the carrier to liability even assuming that the concurring negligence of a third party contributed primarily to the accident. Burnell v. Sportran Transit System, Co., supra; Campbell v. New Orleans Public Service, Inc., 369 So.2d 733 (La.App. 4th Cir.1979).
Thus, the burden of proof placed on Sportran in this case to exculpate itself from negligence was to show that there was no disregard of its duty or its employee's duty to Mrs. Dupree and that her injury resulted from a cause which human care and foresight could not prevent. Sportran need not establish the manner in which Mrs. Dupree was injured but need only prove that its actions at the time of the injury were not negligent ones. In this case where the passenger was injured by another passenger, the high duty of care placed on Sportran would have been violated if there existed reason on the part of the driver to anticipate or foresee that injury may occur. Burnell v. Sportran Transit System, Co., supra. Therefore, Sportran must have proven that there was no reason for the carrier's employee to foresee or anticipate the injury to Mrs. Dupree from her fellow passenger's actions and that the employee did not fail to take such action as may have been practicable under the circumstances to prevent the injury from occurring. See Aime v. Hebert, 282 So.2d 566 (La.App. 4th Cir.1973).
Applying all of the foregoing principles to the instant case, we conclude that the trial court was clearly wrong in finding that Sportran had exculpated itself from even the slightest negligence. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Our review of the record reveals that there is sufficient, uncontradicted evidence in the record to support a finding that Mrs. Dupree was a fare paying passenger on a public conveyance who failed to reach her destination safely. Therefore, the burden shifted to Sportran to exculpate itself from negligence. While Sportran's counsel would have us construe the trial court's reasons as implicitly containing a finding that Mrs. Dupree was a totally incredible witness, after considering the reasons as a whole, we do not choose to do so. There was never a specific finding made by the trial court that Mrs. Dupree was incredible concerning the sustaining of an injury to her foot. Rather the trial court chose to specify the areas of Mrs. Dupree's testimony which it found to be "not very reliable", in fact considered these areas to be insignificant to the decision of the case, and proceeded to address the issue of whether or not Sportran had exculpated itself from negligence stating:
If one accepts as true the recital of the actual incident in which another passenger stepped on Mrs. Dupree's foot which she had left in the aisle and if one finds this minor occurance (sic) to amount to an "injury" in view of Mrs. Dupree's particular susceptibility to vascular problems in her extremities, one must then determine whether or not the defendants have carried the burden of exculpating themselves from even the slightest negligence.
The court is of the opinion that the defendants have carried that burden.
While we agree with the trial court's conclusion that Mrs. Dupree's injury was unconnected with the crowded condition of the bus and could have occurred with only two passengers on the bus, thereby finding that Sportran was not negligent in this respect, we take issue with the trial court's conclusion that the defendants exculpated themselves of even the slightest negligence causally connected to Mrs. Dupree's injury.
Even accepting the premise that Sportran has an obligation to afford transportation to the public [Orr v. New Orleans Public Service, Inc., 349 So.2d 417 (La.App. 4th Cir.1977) ], that premise is qualified by the fact that the transportation provided to the public should be safe and free from hazards. One of the hazards which should be protected from is that of anticipated or foreseeable negligent injury at the hands of *440 a fellow passenger. Thus, when the actions of the carrier or its employees place a passenger in an unnecessary position of peril the carrier is liable. Skipper v. New Orleans Public Service, Inc., 338 So.2d 771 (La.App. 4th Cir.1976).
While any decision in this case at first glance appears to turn on factual findings of the trial court, in fact, the pivotal issue may actually be resolved by the sole consideration of whether under the facts as testified to by the driver, John Dixon, the driver did or omitted to do anything which would constitute a breach of duty to Mrs. Dupree. Under the record facts most favorable to Sportran, the party prevailing in the trial court, it is undisputed that when the passenger in question boarded the bus he had been drinking to such an extent that the driver, even without talking to him, could smell alcohol on his breath from a distance of approximately three feet. Coupled therewith is the admission that this particular passenger, who is identified by the driver as being the only passenger on the bus who had been drinking, had ridden this particular driver's bus after drinking from "time to time" and had caused problems in the past. When questioned more closely about the nature of the trouble which this passenger had caused, the driver became evasive and non specific. However, he thought that this particular passenger had been involved in an incident with a passenger before. While the driver testified he did not observe this passenger to be unsteady on his feet or boisterous, he refers to him at one point in his testimony as being the only "drunk passenger on the bus." Construing all of these factors together, we conclude that the driver had sufficient knowledge and information regarding this particular passenger to at least foresee or anticipate that he might be intoxicated and thus unsteady on his feet or inattentive on the moving bus causing him to fall or step on another passenger. While we are not prepared to hold that allowing a person who has been drinking on a public carrier to be negligence per se, we are of the opinion that carriers who allow persons to travel who obviously manifest signs of drinking to a driver, have an obligation to other passengers to do more than to simply allow that person to board the bus and ignore him thereafterwhich is exactly what occurred in this case. By the driver's own admission he paid no further attention to this passenger and was not even aware of the incident until it was reported to him by Mrs. Dupree. It is further noteworthy that Sportran has no policy regarding the proper procedure for its drivers to follow when a passenger who has been drinking boards a bus.
Negligence must be determined in each case according to the particular facts and circumstances. Baptiste v. Washington, 359 So.2d 1122 (La.App. 4th Cir. 1978). We conclude that under these particular facts and circumstances that it was certainly foreseeable that at the least this passenger who had obviously been drinking and had caused problems in the past would be unsteady enough on his feet or inattentive enough while in the aisle to step or fall on another passenger because unsteadiness or inattention are consequential risks inherent in drinking. We further conclude that as a matter of public policy, the law imposes a duty on a public carrier either to refuse to board a passenger, whose probable impaired ability to ambulate is known, constructively or actually, by the carrier, or to warn other passengers on the carrier to remain clear of the aisle so that the boarding passenger may be seated. The wisdom of this rule of law is apparent. It not only protects the person who has been drinking but also protects his fellow passengers from injuries arising as a result of his impaired ability to ambulate. As the impairment of the drinking passenger increases, the need for greater precaution in allowing him to board the public carrier increases.
Accordingly, Mrs. Dupree's injury falls within the ambit of foreseeable risk, and Sportran failed to observe the high degree of care placed upon it as a public carrier in such instances to avoid such a risk. The existence of the risk imposed a corresponding duty on the part of the bus driver to *441 take reasonable action to avoid the risk here to either refuse to board the drinking passenger or to warn other passengers on the carrier to remain clear of the aisle so that he might be safely seated. See Burnell v. Shreveport Transit System Co., supra. Here, the driver admittedly did nothing. Consequently his inaction was a failure to take reasonable action which breached his duty and resulted in damages to Mrs. Dupree. Because of this "ease of association" between the risk and the duty, liability should be imposed. Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972).
Because the burden in this case had shifted to Sportran to show that the incident did not occur or that it exercised reasonable care in discharging Mrs. Dupree or that any negligence on its part was not the legal cause of the mishap, we conclude that the evidence presented by Sportran was insufficient to rebut the prima facie case of negligence. Because Sportran did not prove that the incident did not occur, that it was free from the slightest negligence or that any negligence on its part was not a legal cause of the mishap, the trial court was clearly wrong in its legal conclusion of exculpation. Galland v. New Orleans Public Service, Inc., supra; Arceneaux v. Domingue, supra; Burnell v. Sportran Transit System, Co., supra.
Having concluded that Mrs. Dupree was injured as a result of the negligence of Sportran, we consider the issue of damages. Under La.C.C.P. Art. 2164, Courts of Appeal are empowered to award damages in cases where the trier of fact initially rejects the plaintiff's demands, and the record is complete with regard to damages. Burnell v. Sportran Transit System Co., supra.
Admittedly had a person with no pre-existing health problems been stepped on to the degree present here, it would be a minor occurrence, and a court would be hard pressed to award any damages. However, a defendant takes his victim as he finds him and is responsible for all the natural and probable consequences of his tortious conduct. When the defendant's negligent action aggravates a pre-existing condition, he must compensate the victim for the full extent of this aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La. 1980). Each case involving personal injuries to a claimant is different, and an award should be determined by the facts and circumstances peculiar to the case under consideration which will adequately compensate the injured party for his injury under the facts shown to exist in the case. Holman v. Reliance Ins. Companies, 414 So.2d 1298 (La.App. 2d Cir.1982).
Our evaluation of the evidence, both medical and lay, leads us to conclude that the incident on the Sportran bus aggravated the pre-existing diabetic peripheral vascular disease suffered by Mrs. Dupree. Taken as a whole, the testimony supports a finding that it was more probable than not that Mrs. Dupree's difficulties with her right leg and foot were aggravated and accelerated by the injury suffered. The medical evidence revealed and it is undisputed that Mrs. Dupree suffers from diabetes and that vascular problems are commonly associated with diabetics. Mrs. Dupree suffered accompanying vascular problems which required treatment and surgery in 1980 after another accident. Because sufferers of vascular disease do not heal as well as those who are in good health, any type of trauma, even slight, may accelerate into a major problem. Mrs. Dupree was suffering from this condition on the date of the accident. She had developed a condition described as pre-gangrene in the involved toes. Upon this finding, her treating physician admitted her to the hospital where she underwent surgery consisting of a bypass from the groin to just above her knee utilizing a Dacron graft to implant a dacron femoral artery to the popliteal artery. This procedure bypasses the area where the blockage is located in the artery. When there is a blockage in the artery, any type of trauma to the extremity does not heal normally, and gangrene may develop which can result in loss of the extremity. Gangrene [or death of tissue] is frequently precipitated in sufferers of vascular disease by trauma. Stepping on such a person's *442 foot constitutes trauma. From the history related to the physician and the physical symptomology, the trauma suffered as a result of her foot being stepped upon precipitated the changes in the condition of foot which necessitated her hospitalization from April 16-26, 1982 and the accompanying surgery to prevent the future loss of the extremity.
The medical expenses incurred by Mrs. Dupree are stipulated to be in the amount of $7285.11. Therefore, we award special damages in that amount in accordance with the stipulation.
According to Mrs. Dupree, she immediately began to suffer pain after the incident which worsened progressively. When she left the hospital, she had problems working and it was approximately four months before she recovered. She was discharged by the surgeon in June, 1982. Before the stitches were removed, the ones located in the incision in the groin pulled loose necessitating their replacement. At the time of trial, Mrs. Dupree admitted that her leg had returned to normal except for problems with its becoming stiff if she attempts to walk for an extended distance. She also continued to complain that she was unable to walk as far as she could prior to the surgery and that she cannot engage in all of the activities in which she participated prior to the accident, including taking care of her daughter's children.
Accordingly, we find that $7500 will adequately compensate Mrs. Dupree for her pain and suffering.
According to the stipulation filed of record by the parties, Allstate Insurance Company had a policy of automobile medical payments coverage in effect on April 14, 1982, in favor of Mrs. Dupree. The $2000 limit of medical payments coverage was paid to Mrs. Dupree and the parties have agreed that Allstate is to be subrogated conventionally to the first $2000 of damages recovered.
Accordingly, and for the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of Annie T. Dupree and against Louisiana Transit Management, Inc., d/b/a Sportran, John Dixon and National Union Fire Insurance Company of Pittsburgh, Pennsylvania in the full sum of $14,785.11 with legal interest from date of judicial demand until paid and for all costs of these proceedings subject to the subrogation agreement with Allstate Insurance Company.
JUDGMENT REVERSED AND RENDERED.
HALL, J., dissents and assigns written reasons.
SEXTON, J., dissents for the reasons assigned by HALL, J.
HALL, Judge, dissenting.
Taking the evidence in a light most favorable to the plaintiff (which we should not do because the trial judge found her to be an unreliable witness), the evidence establishes that the driver allowed a man who had been drinking and who had created disturbances on the bus in the past to get on the bus, and the driver did not supervise or otherwise pay any attention to the man.
Plaintiff, who had been standing, went to a seat when it was vacated. As she was sitting down and before she moved her right foot out of the aisle, the man who had been drinking stepped on her foot in the aisle as he was walking to a seat.
The evidence is insufficient to warrant the conclusion that the man's condition, assuming some degree of intoxication, had any causal connection with his stepping on her foot. This is the kind of accident that can and does frequently happen in the absence of intoxication.
Further, I do not believe the evidence supports a finding that the driver should have suspected this passenger would step on somebody's foot, or otherwise harm another passenger, or a holding that the driver was guilty of even the slightest negligence in allowing the man on the bus or in failing to monitor his conduct on the bus.
Accordingly, I respectfully dissent from the opinion reversing the trial court.